FILED

Fee
Due

Eli Toney DelRay
NAME
CSH # 000155-2
PRISON IDENTIFICATION/BOOKING NO.
24511 West Jayne Avenue
P.O. Box 5003      Unit 12
ADDRESS OR PLACE OF CONFINEMENT
Coalinga, California
93211-5003

Note:   It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his name,
address, telephone and facsimile numbers, and e-mail address.

2010 MAR 15 PM 1:26

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

In Re:

Eli Toney DelRay

FULL NAME (*Include name under which you were convicted*)
Petitioner,

v.

NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER
Respondent.

CASE NUMBER:
CV  **CV10-01845** VBF (RNB)

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

### PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION   Los Angeles
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number*)
CV _____
CV _____

### INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6.   When you have completed the form, send the original and two copies to the following address:
   Clerk of the United States District Court for the Central District of California
   United States Courthouse
   ATTN: Intake/Docket Section
   312 North Spring Street
   Los Angeles, California 90012

LODGED
CLERK, U.S. DISTRICT COURT

MAR 12 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CV-69 (04/05)

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☐ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☒ a parole problem.
4. ☒ other.

## PETITION

1. Venue
   a. Place of detention __Coalinga State Hospital, Coalinga, California__
   b. Place of conviction and sentence __Detention Order Made In Los Angeles Superior Court,__
      __On June 27, 1996.__

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*): __Detention for Sexually Violent__
      __Predator Act__
   b. Penal or other code section or sections: __Welfare & Institutions Code Section__
      __6600 et seq.__
   c. Case number: __ZM 001979__
   d. Date of conviction: __June 27, 1996__
   e. Date of sentence: __N/A__
   f. Length of sentence on each count: __No trial or Commitment yet.__

   g. Plea (*check one*):
      ☒ Not guilty     Demurrer
      ☐ Guilty
      ☐ Nolo contendere
   h. Kind of trial (*check one*):    No Trial Yet.. Trial Pending
      ☐ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?     ☐ Yes  ☒ No
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):
   a. Case number: _____
   b. Grounds raised (*list each*):
      (1) _____

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _____

d.  Result _____

_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?  ☐ Yes   ☒☒ No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: _____

b.  Grounds raised *(list each)*:

(1) _____

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _____

d.  Result _____

_____

5.  If you did not appeal:

a.  State your reasons <u>Not ripe for appeal, Issues would be waived if a trial</u> <u>were held.  Pursued Writs of Habeas Corpus.</u>

_____

_____

_____

b.  Did you seek permission to file a late appeal?   ☐ Yes   ☒☒ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☒☒ Yes   ☐ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

---

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)**

a. (1) Name of court: Los Angeles Superior Court  dept. 116

(2) Case number: # ZM 001979

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: 06-10-08

(4) Grounds raised *(list each)*:

(a) Please see attached petition for grounds. All grounds are the same.

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: 06-10-08

(6) Result  Denied by Minute Order (see Exhibit Ap. 1)

(7) Was an evidentiary hearing held?      ☐ Yes  ☒ No

b. (1) Name of court: California Court of Appeal, Second Appellate District,

(2) Case number: # B211946

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: 11-07-08

(4) Grounds raised *(list each)*:

(a) Please see attached petition for grounds.

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: 12-10-08

(6) Result  Denied by citation (see Exhibit Ap. 2)

(7) Was an evidentiary hearing held?      ☐ Yes  ☒ No

c. (1) Name of court: California Supreme Court

(2) Case number: # S172450

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: 04-27-09

(4) Grounds raised *(list each)*:

(a) Please see attached petition for grounds.

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: 09-30-09

(6) Result   Denied 'En Banc' by citation. (see Exhibit Ap. 3)

_____

(7) Was an evidentiary hearing held?   ☐ Yes   ☒ No

7. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**   *Exhaustion Requirement:* In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a. Ground one: Petitioner was denied due process and right to attorney by the department of corrections and the department of mental health during screening for the sexually violent predator act in violation of the 1st, 5th, 6th, and 14th Amendments.

(1) Supporting FACTS: Facts are too numerous to place here. Please see attached Petition for Writ of Habeas Statement of Facts for ground one at page 7.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

b. Ground two: Petitioner was denied due process, effective assistance of counsel and right to confrontation of witnesses, when the California Board of Prison Terms illegally seized and detained petitioner in violation of the 1st, 4th, 5th, 6th, 8th and 14th amendments...

(1) Supporting FACTS: Facts are too numerous to place here. Please see attached Petition for Writ of Habeas Statement of Facts for ground two at page 26.

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

c.   Ground three: Petitioner was illegally seized and imprisoned by the California Department of Mental Health without a lawful court order or due process in violation of the 1st, 4th, 5th, 6th, 8th and 14 Amendments...

(1) Supporting FACTS: Facts are too numerous to place here. Please see attached Petition for Writ of Habeas Statement of Facts for ground three at page 41.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

d.   Ground four:  Rick Vagnozzi, Los Angeles County Deputy District Attorney, intentionally misled the court in violation of Business and Professions Code §6068 and caused the illegal restraint of Petitioner in violation of the 1st, 4th, 8th and 14th Amendments...

(1) Supporting FACTS:   Facts are to numerous to place here. Please see attached Petition for Writ of Habeas Statement of Facts for ground four at page 53.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

e.   Ground five: The Superior Court did not have jurisdiction to arraign Petitioner or hold a probable cause hearing and this action violated the rights guaranteed by the 1st, 4th, 5th, 6th, 8th and 14th Amendments...

(1) Supporting FACTS: Facts are too numerous to place here. Please see attached Petition for Writ of Habeas Statement of Facts for ground five at page 59.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☒ Yes   ☐ No

8.  If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state
    briefly which grounds were not presented, and give your reasons: _____

    _____All grounds presented here are the same as presented to the State Courts,_____

    _____including the California Supreme Court._____


9.  Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?
    ☐ Yes   ☒ No

    If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and
    the rulings on the petitions if available)*:

    a.  (1) Name of court: ____N/A_____

        (2) Case number: _____

        (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

        (4) Grounds raised *(list each)*:

        (a)  _____

        (b)  _____

        (c)  _____

        (d)  _____

        (e)  _____

        (f)  _____

        (5) Date of decision: _____

        (6) Result  _____

        _____

        (7) Was an evidentiary hearing held?   ☐ Yes  ☐ No


    b.  (1) Name of court: ____N/A_____

        (2) Case number: _____

        (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

        (4) Grounds raised *(list each)*:

        (a)  _____

        (b)  _____

        (c)  _____

        (d)  _____

        (e)  _____

        (f)  _____

        (5) Date of decision: _____

        (6) Result  _____

(7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect

to this judgment of conviction?    ☐ Yes    ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

11. Are you presently represented by counsel?    ☒ Yes    ☐ No

If so, provide name, address and telephone number: <u>Karen King, Public Defenders Office</u>

<u>312 South Hill Street, Los Angeles, Calif. 90013</u>

<u>Phone # 213-893-7381    (For SVP Proceedings Only)</u>

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

*El. Toney DelRay*

Eli Toney Delray    In Pro Per
**Signature of Attorney (if any)**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on <u>3-10-2010</u>        *El. Toney DelRay*
        **Date**                    **Signature of Petitioner**

_Eli Toney DelRay_
_____
*Petitioner*

_____
*Respondent(s)*

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

I, _Eli Toney DelRay_____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed? ☐ Yes   ☒ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____
   _____

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. _February 2006  at $22.00 per Month_____

2. Have you received, within the past twelve months, any money from any of the following sources?

   a. Business, profession or form of self-employment?   ☐ Yes   ☒ No
   b. Rent payments, interest or dividends?   ☐ Yes   ☒ No
   c. Pensions, annuities or life insurance payments?   ☐ Yes   ☒ No
   d. Gifts or inheritances?   ☐ Yes   ☒ No
   e. Any other sources?   ☒ Yes   ☐ No

   If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: _$300.00 Government Stimulus Check_____
   _____
   _____

3. Do you own any cash, or do you have money in a checking or savings account? *(Include any funds in prison accounts)*
   ☐ Yes   ☒ No
   If the answer is yes, state the total value of the items owned: _____
   _____

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)

## Duplication Order Form

Name: _Eli DeLeon_

CO# _000155-2_          Date: _3-9-2010_

Completed by: _____ (Staff Name)

Order Filled by: _____ (Staff Name)

Signature: _____ (Individual Signature)

_Eli Tony DeLeon_

☐ Indigent

☐ Legal          Appointment

☐ Personal       Date: _3/10/10_     Time: _1:15_

Rev. 5.5.06          CPS

1. Original Description _____ Originals _____ X _____ = _____

2. Original Description _____ Originals _____ X _____ = _____

3. Original Description _____ Originals _____ X _____ = _____

4. Original Description _____ Originals _____ X _____ = _____

5. Original Description _____ Originals _____ X _____ = _____

Total Withdrawn $ _____          Total: _____



## RECEIPT

No. 099817

DATE _3.8.10_

FROM _DeLeon_          $ _____

TO _United States District Clerk_

☐ FOR RENT _Legal Indigent mail_

☐ FOR _____

ACCT. _____

PAID _____

DUE _____

☐ CASH   ☐ CHECK   ☐ MONEY ORDER          BY _CM_

1152

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☑ Yes   ☐ No

If the answer is yes, describe the property and state its approximate value: __4 year old Dell__ Laptop Computer used to type this Writ valued new at $842.24

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____none_____

I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on __3-10-2010__
           · Date

_El. Trey DelRay_
Signature of Petitioner

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $ __12 52__ on account to his credit at the __Coalinga State Hospital, Coalinga, California__ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution: __none__

__3-10-2010__
    Date

Authorized Officer of Institution/Title of Officer

See Attached indigent forms

# EXHIBIT COVER PAGE



**EXHIBIT**

Description of this exhibit: California Supreme Court "En banc" 'Order'
Petition for Writ of Habeas Corpus
"DENIED"          (Dated  09-30-2009)

Number of pages to this Exhibit:  ____1____ pages.

JURISDICTION:  (Check only one)

☐  Municipal Court
☐  Superior Court
☐  Appellate Court
☐  State Supreme Court
☒  United States District Court
☐  State Circuit Court
☐  United States Supreme Court
☐  Grand Jury

S172450

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re ELI TONEY DELRAY on Habeas Corpus.

---

The petition for writ of habeas corpus is denied.   (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Dixon* (1953) 41 Cal.2d 756.)

SUPREME COURT
**FILED**

SEP 3 0 2009

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**GEORGE**
*Chief Justice*

Eli Toney DelRay
Sup. Ct. No. ZM 001979


# EXHIBIT COVER PAGE



Ap. 1

EXHIBIT


Description of this exhibit: Superior Court Minute Order   Dept. 116
Petition for Writ of Habeas Corpus
"DENIED"        (Dated 06-19-2008)


Number of pages to this Exhibit: ___1___ pages.


JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| Date: JUNE 19, 2008 | DEPT. 116 |
| Honorable: NORM SHAPIRO | Judge | MICHAEL TORRES | Deputy Clerk |
| JOSEPH LANGIL | Bailiff | JUDI MARCELLO | Reporter |

| | |
|---|---|
| ZM001979 | (Parties and Counsel checked if present) |
| People of the State of California | Counsel For People: |
| vs | DEPUTY DISTRICT ATTORNEY: CHERYL N.GAINS ☐ |
| | |
| ELI DEL RAY ☐ | Counsel For Respondent: |
| | Pro per ☐ |
| Respondent | |

Nature of Proceedings: Petition for Writ of Habeas Corpus

The court has read and reviewed petitioners request for Writ Relief filed 6-10-08.

Petitioner is currently pending trial on Sexually Violent Preditor proceedings.

A probable cause determination was conducted prior to the above trial setting.

A pretrial hearing was conducted on 5-23-08 and 6-3-08 where the petitioner was represented by counsel. Issues raised in petitioners current writ were resolved.

Petitioners Writ request is denied.

Petitioners status as a Sexually Violent Preditor will be resolved at Trial.

Defendant is currently housed at County jail booking # 1512011 pending jury trial.

Custody status: Remanded

A copy of this minute order is sent this date via u.s. mail to:

Eli Toney DelRay cdc # csh-000155-2
P.O. Box 5003 RRU-4
Coalinga, CA 93211-5003

| |
|---|
| Minutes Entered |
| 06-19-2008 |
| COUNTY CLERK |

Department 116

# EXHIBIT COVER PAGE



Ap. 2

EXHIBIT

Description of this exhibit: **Court of Appeals 'ORDER'**

**Petition for Writ of Habeas Corpus**
**"DENIED"** (Dated 12-10-2008)

**Face Page**
**Order**

Number of pages to this Exhibit: ___2___ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☑ State Supreme Court
☑ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

Eli Toney DelRay
CDC:000155-2
24511 West jayne Avenue
P.O. box 5003  RRU-12
Coalinga 93211

Case Number B211946
Division  5

In re ELI TONEY DELRAY on Habeas Corpus.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

DEC 1 8 2008

JOSEPH A.
J. BELCHER

| | |
|---|---|
| In re | B211946 |
| ELI TONEY DELRAY | (Super. Ct. No. ZM001979) |
| on | (Norm Shapiro, Judge) |
| Habeas Corpus. | **O R D E R** |

THE COURT:

The court has read and considered the petition for writ of habeas corpus, filed November 7, 2008.  The petition is denied.  Petitioner fails to provide a reasonably complete statement of the case or record of proceedings in the trial court, and often states his claims in conclusory terms that do not support his arguments.  (See *People v. Duvall* (1995) 9 Cal.4th 464, 474; *People v. Karis* (1988) 46 Cal.3d 612, 656.)  To the extent petitioner raises issues that may be asserted on appeal, petitioner also improperly seeks habeas relief.  (See *In re Harris* (1993) 5 Cal.4th 813, 826; *In re Clark* (1993) 5 Cal.4th 750, 765; *In re Waltreus* (1965) 62 Cal.2d 218, 225.)

_____     _____     _____
ARMSTRONG, Acting P.J.          MOSK, J.                          KRIEGLER, J.

Eli Toney DelRay CO # 000155-2
Coalinga State Hospital
24511 West Jayne Avenue
P.O. Box  5003    Unit 12
Coalinga, Calif.   93210-5000

**In Propria Persona**

```
┌─────────────────────────────┐
│                             │
│                             │
│                             │
│                             │
│       COURT FILING STAMP    │
│                             │
└─────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In Re:

**ELI TONEY DELRAY,**

**On Habeas Corpus.**

No. _____

Supreme Court No. S172450
Cal.App. No. B211946
Superior Ct. No.  ZM 001979
In Re:   CRIM.  A 766947

28 U.S.C. § 2254

# PETITION FOR WRIT OF HABEAS CORPUS

Eli Toney DelRay
Petitioner in Pro-Per

# <u>Table of Contents</u>

**Grounds Presented**      i-iii

**Table of Authorities - Federal**      iv-v

**Table of Authorities - California**      v-xi

**Table of Authorities - Ohio Statutes**      xi

**Treatise**      xii

**Exhibits for Exhaustion**      xiii

**Table of Exhibits**      xiii-xiv

**Table of Attachments**      xv-xvi


**PETITION:**

    **VENUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    **GROUNDS, ARGUMENTS, POINTS AND AUTHORITIES** . . . . . . . . . . . . . **7**

    **PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **84**

    **VERIFICATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **85**

## I.

**PETITIONER WAS DENIED DUE PROCESS AND RIGHT TO ATTORNEY BY THE DEPARTMENT OF CORRECTIONS AND DEPARTMENT OF MENTAL HEALTH DURING SCREENING FOR THE SEXUALLY VIOLENT PREDATOR ACT IN VIOLATION OF THE 1ST, 5TH, 6TH, AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION...**

Statement Of Facts Germane To Ground One . . . . . . . . . . . . . . . . . . . . . . . . . **7**

Arguments For Ground One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    A. The Legislative Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    B. Established Due Process Requirements For Involuntary Commitment . . **10**

    C. Absence Of Procedures For SVP Screening Violated Due Process . . . . **13**

i

D. Notice Is Fundamental To Due Process . . . . . . . . . . . . . . . . . . . . . . . **15**

E. Title 15 Provides Meaningful Due Process Protections . . . . . . . . . . . . **20**

## II.

**PETITIONER WAS DENIED DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL, AND RIGHT TO CONFRONTATION OF WITNESSES, WHEN THE CALIFORNIA BOARD OF PRISON TERMS ILLEGALLY SEIZED AND DETAINED PETITIONER IN VIOLATION OF THE 1TH, 4TH, 5TH, 6TH, 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

Statement Of Facts Germane To Ground Two . . . . . . . . . . . . . . . . . . . . . . . **26**

Arguments For Ground Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

A. The Authority Of The California Board Of Prison Terms . . . . . . . . . . . **27**

B. The Pre-emptive 72 Hour Hold Was Unauthorized And Illegal . . . . . . **28**

C. The BPT's Finding Of Probable Cause Exceeded Their Authority . . . . **31**

D. Failure To Release Petitioner Violated The 4th And 8th Amendments . . **36**

## III.

**PETITIONER WAS ILLEGALLY SEIZED AND IMPRISONED BY THE CALIFORNIA DEPARTMENT OF MENTAL HEALTH WITHOUT A LAWFUL COURT ORDER OR DUE PROCESS IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 8TH, AND 14TH, AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

Statement Of Facts Germane To Ground Three . . . . . . . . . . . . . . . . . . . . . . **41**

Arguments For Ground Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **42**

A. Acceptance By Hospital Violated The Fourth Amendment . . . . . . . . . . **42**

B. Detention At Atascadero Amounted To Additional Punishment . . . . . . **44**

C. Discharge By Hospital Voided The Petition For Commitment . . . . . . . **48**

## IV.

**RICK VAGNOZZI, LOS ANGELES COUNTY DEPUTY DISTRICT ATTORNEY, INTENTIONALLY MISLED THE COURT IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 6068**

1
2

**AND CAUSED THE ILLEGAL RESTRAINT OF PETITIONER IN VIOLATION OF THE 1st, 4th, 8th AND 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

3

Statement Of Facts Germane To Ground Four . . . . . . . . . . . . . . . . . . . . . . . . . **53**

4

Arguments For Ground Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **53**
   A.  The District Attorney's Level Of Review, Per W&I Code § 6601 . . . . **53**

5
6

   B.  The Acts Leading To Filing Of Petition . . . . . . . . . . . . . . . . . . . . . . . **54**

   C.  The Petition Was Intentionally Fabricated By DDA Rick Vagnozzi . . **55**

7
8
9

**V.**

10
11

**THE SUPERIOR COURT DID NOT HAVE JURISDICTION TO ARRAIGN PETITIONER OR HOLD A PROBABLE CAUSE HEARING AND THIS ACTION VIOLATED THE RIGHTS GUARANTEED BY THE 1st, 4th, 5th, 6th, 8th AND 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

12

13

Statement Of Facts Germane To Ground Five . . . . . . . . . . . . . . . . . . . . . . . . . **59**

14

Arguments For Ground Five . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **62**

15

   A.  Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **62**

16

   B.  The Limiting Factors Of The SVP Act . . . . . . . . . . . . . . . . . . . . . . . . **63**

17

   C.  The Superior Court Lacked Jurisdiction For Arraignment . . . . . . . . . **68**

18

   D.  Petitioner Was Entitled to A Hearing On The Plea Of Demurrer . . . . . **72**

19

   E.  The Superior Court Lacked Jurisdiction For Probable
      Cause Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **74**

20

**VI.**

21

**CONCLUSION**

22

**82**

23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Case Name**                                                    **Page**

## UNITED STATES CONSTITUTION

Amendment I              2, 3, 4, 5, 6, 7, 13, 25, 26, 38, 41, 51, 53, 56, 57, 59, 80

Amendment IV             2, 3, 4, 5, 6, 26, 36, 39, 41, 42, 51, 53, 56, 57, 59, 80

Amendment V              2, 3, 4, 5, 6, 7, 13, 25, 26, 39, 41, 51, 59, 80

Amendment VI             2, 3, 4, 5, 6, 7, 13, 25, 26, 39, 41, 52, 59, 80

Amendment VIII           2, 3, 4, 5, 6, 26, 36, 38, 39, 41, 52, 53, 56, 57, 59, 80

Amendment XIV            2, 3, 4, 5, 6, 7, 13, 25, 26, 36, 39, 41, 52, 53, 56, 57, 59, 81

## FEDERAL CITATIONS

*Armstrong v. Manzo* (1965) 380 U.S. 545                                   32

*Berger v. United States* (1935) 295 U.S. 78; 55 S.Ct. 629              57, 70

*Bradley v. Fisher* (U.S.Dist.Col. 1871) 80 U.S. 335; 20 L.Ed. 646; 13 Wall. 335        83

*C.I.R. v. Sunnen* (U.S.Mo. 1948) 68 S.Ct. 715; 333 U.S. 591               78

*Connecticut Nat. Bank v. Germain* (1992) 503 U.S. 249; 112 S.Ct. 1146      69

*Cromwell v. County of Sac*, 94 U.S. 351, 352; 24 L.Ed. 195                79

*Estate of Cowart v. Nicklos Drilling Co.,* (1992) 505 U.S. 469; 112 S.Ct. 2589      69

*Estelle v. Smith* (1981) 451 U.S. 454                                    5, 21

*Felce v. Fielder* (7th Cir. 1992) 974 F.2d. 1484                          38

*Fuentes v. Shevin* (1972) 407 U.S. 67; 92 S.Ct. 1983                       4

*Hughes Aircraft Co. v. Jacobson* (U.S.Cal. 1999) 119 S.Ct. 755            69

*Hydrick v. Hunter* (C.A.9 (Cal.) 2006) 449 F.3d 978                       44

*In re Gault* (1967) 387 U.S. 1                                           11

*Jones v. Blanas* (9th Cir. 2004) 393 F.3d 918                            48

*Lambert v. California* (1958) 355 U.S. 225                               15

*Miller v. Vitek* (Neb. 1977) 437 F. Supp. 569                          11, 38

1   *Morrissey v. Brewer* (1972) 408 U.S. 471                                         4, 11, 12

2   *Mullane v. Central Hanover Bank Tr. Co.* (1950) 339 U.S. 306                      19, 20

3   *Powell v. Alabama* (1932) 282 U.S. 45                                            21

4   *Sharp v. Weston* (9th Cir.2000) 233 F.3d 1166                                    48

5   *Strickland v. Washington* (1984) 466 U.S. 668                                    5, 33

6   *Specht v. Patterson* (1967) 386 U.S. 605                                         5, 21

7   *Texas v. Johnson* (1989) 491 U.S. 397                                            83

8   *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557;

9          cert. Denied 117 S.Ct. 1862; 520 U.S. 1248                                 31

10  *United States v. DeCoster* (D.C. Cir. 1973) 487 F.2d 1197                        33

11  *United States v. Wade* (1967) 288 U.S. 218                                       21

12  *Vitek v. Jones* (1980) 445 U.S. 480                                             4, 5, 10-11

13  *Wolff v. McDonnell* (1974) 418 U.S. 539                                          4, 11

14  *Youngberg v. Romeo* (U.S.Pa. 1982) 102 S.Ct. 2452; 457 U.S. 307                 48

15

16                          **FEDERAL STATUTES**

17  **42 U.S.C.A. § 1983**                                                           48

18  **28 U.S.C.A. § 2254**                                                           **1**

19

20                          **STATE CITATIONS**

21  *85 Ops. Cal. Atty. Gen. 11* (Atty. Gen. Bill Lockyer, 2002 DJDAR 507 No. 00-1212)   18

22  *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288; 109 P.2d 942   68

23  *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 4 Cal.Rptr.2d 615; 823 P.2d 1216    66

24  *Albertson v. Superior Court (People)* (2000) 77 Cal.App.4th 431                  75

25  *Albertson v. Superior Court (People)* (C. 2001) 25 Cal.4th 796                   75-76

26  *Anderson v. Superior Court* (1989) 213 Cal.App.3d 1321                           20

27  *Cathay Bank v. Fidelity National Title Insurance Co.*

28         (1996) 46 Cal.App.4th 266; 53 Cal.Rptr.2d 595                              66

*City of Sacramento v. Public Employees' Retirement System*

    (1994) 22 Cal.App.4th 786, 794; 27 Cal.Rptr.2d 545 ........................................ 66

*Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552 ..... 12, 21

*Conservatorship of Moore* (1986) 185 Cal.App.3d 718 ......................................... 19

*Cooley v. Superior Court (Marentez)*

    (Cal. 2002) 29 Cal.4th 228; 127 Cal.Rptr.2d 177 ........................................ 82

*County of San Diego v. State of California* (1997) 15 Cal.4th 68 ......................... 33

*Dyna-Med, Inc. v. Fair  Employment & Housing Com.*

    (1987) 43 Cal.3d 1379 ........................................................................ 19, 33-34

*Gerald Rogers v. Superior Court* (1999) (unpublished) ........................................ 82

*Harrington v. Superior Court of the State of California, In and For Placer County*

    (1924) 194 Cal. 185; 228 P. 15 ................................................................ 63

*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 ............................................ 13, 24

*In re Christian S.* (1994) 7 Cal.4th 788 ......................................................... 34, 67

*In re Greenfield* (1970) 11 Cal. App. 3d 536, 541; 89 Cal.Rptr. 847 ..................... 72

*In re Johnson* (1963) 62 Cal. 2d 325 ............................................................. 21

*In re Parker* (1998) 60 Cal.App.4th 1453 ....................................................... 12, 24

*In re Rainer* (1963) 59 Cal.2d 635; 30 Cal.Rptr. 814; 381 P.2d 638 ..................... 62

*In Re Reina* (1985) 171 Cal.App3d 638 .......................................................... 33

*In re Williams* (1969) 1 Cal.3d 168; 81 Cal.Rptr. 784 ...................................... 72-73

*Lakin v. Watkins Associated Industries*

    (1993) 6 Cal.4th 644, 659; 25 Cal.Rptr.2d 109; 863 P.2d 179 ...................... 67

*McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023 ................................... 10, 37

*Miller v. Superior Court* (1985) 168 Cal.App.3d 376; 214 Cal.Rptr. 125 ................ 78

*Mutual Life Ins. Co. v. City of Los Angeles*

    (1990) 50 Cal.3d 402, 412; 267 Cal.Rptr. 589; 787 P.2d 996 ...................... 66

*N.B.S. Corp. v. Gabrielsen*

    (Cal.App. 1 Dist. 1986) 225 Cal.Rptr. 254; 179 Cal.App.3d 1189 ............... 78

1 | *People ex rel. San Francisco Bay Construction etc.  Com. v. Smith*,
2 |         26 Cal.App.4th at p. 122                                          19
3 | *People v. Bolton* (1979) 23 Cal.3d 208; 152 Cal.Rptr. 141; 589 P.2d 396     57, 70
4 | *People v. Burgener* (1986) 41 Cal.3d 505                                10, 37
5 | *People v. Burnick* (1975) 14 Cal.3d 306                                     47
6 | *People v. Butler* (1998) 68 Cal.App.4th 421                                 65
7 | *People v. Davis* (1995) 10 Cal.4th 463; 41 Cal.Rptr.2d 826; 896 P.2d 119    76
8 | *People v. Fierro* (1991) 1 Cal.4th 173; 3 Cal.Rptr.2d 426; 821 P.2d 1302    71
9 | *People v. Haskett* (1982) 30 Cal.3d 841; 180 Cal.Rptr. 640; 640 P.2d 776    70
10 | *People v. Harrison* (1989) 48 Cal.3d 321; 256 Cal.Rptr. 401                65
11 | *People v. Hernandez* (1998) 19 Cal.4th 835; 80 Cal.Rptr.2d 754; 968 P.2d 465  77
12 | *People v. Holdsworth* (1988) 199 Cal.App.3d 253                            38
13 | *People v. Hubbart* (2001) 88 Cal.App.4th 1202                              55
14 | *People v. Hunt* (1999) 74 Cal.App.4th 939; 88 Cal.Rptr.2d 524             66
15 | *People v. Ibarra* (1963) 60 Cal.2d 460; 34 Cal.Rptr. 863                  73
16 | *People v. Johnson* (1989) 47 Cal.3d 1194; 255 Cal.Rptr. 569; 767 P.2d 1047  71
17 | *People v. Mitchell* (4 Dist. 2000) 96 Cal.Rptr.2d 401; 81 Cal.App.4th 132   76, 77-78
18 | *People v. Monge* (1997) 16 Cal.4th 826; 66 Cal.Rptr.2d 853; 941 P.2d 1121   77
19 | *People v. Pope* (1979) 23 Cal.3d 412                                       33
20 | *People v. Pitts* (5 Dist. 1990) 273 Cal.Rptr. 757; 223 Cal.App.3d 606      57, 70
21 | *People v. Ramirez* (1979) 25 Cal.3d 260                            12, 13, 14, 20
22 | *People v. Snook* (1997) 16 Cal.4th 1210                                    65
23 | *People v. Superior Court (Gary)* (2000) 85 Cal.App.4th 207                 65
24 | *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56                      68
25 | *People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383            68
26 | *People v. Swink* (1984) 150 Cal.App.3d 1076                                15
27 | *People v. Trevino* (1985) 39 Cal.3d 667, 682; 217 Cal.Rptr. 652; 704 P.2d 719  71
28 | *People v. Walker* (2001) 107 Cal.Rptr.2d 264; 89 Cal.App.4th 380          77

1   *People v. Watts* (1st Dist. 1999) 76 Cal.App.4th 1250                                      71

2   *People v. Zimmerman* (1980) 102 Cal. App. 3d 647; 161 Cal. Rptr. 669                       72

3   *Reno v. Baird* (1998) 18 Cal.4th 640                                                       69

4   *Sporich v. Superior Court* (2D 2000) 77 Cal.App.4th 422                                 61, 75

5   *Steers v. Lamkins* (2002) 122 Cal.Rptr.2d 1                                                19

6   *Terhune v. Superior Court (Whitley)* (1998) 65 Cal.App.4th 864                          27, 37

7   *Thor v. Superior Court* (1993) 5 Cal.4th 725                                               19

8   *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557;

9        59 Cal.Rptr.2d 186 (cert. Denied 117 S.Ct. 1862; 520 U.S. 1248)                        31

10  *United Farm Workers of America v. Superior Court* (1975) 14 Cal.3d 902                      20

11  *Zachary v. Superior Court* (1997) 67 Cal.Rptr.2d 532                                        38

12

13

14                    **BUSINESS AND PROFESSIONS CODE**

15  **§ 6068**                                                                                  53

16  **§ 6068(d)**                                                                               56

17

18                    **CALIFORNIA CODE OF REGULATIONS**

19  **15 CCR § 2000(a)(75)**                                                                    37

20  **15 CCR § 2355**                                                                           37

21  **15 CCR § 2600.1**                                 27, 28, 30, 31, 33, 34, 35, 37, 41, 61, 79

22  **15 CCR § 2741**                                                                           28

23  **15 CCR § 3001**                                                                           21

24  **15 CCR § 3002**                                                                           21

25  **15 CCR § 3014**                                                                           22

26  **15 CCR § 3075.2**                                                                         28

27  **15 CCR § 3075.2(a)**                                                                      37

28  **15 CCR § 3084.1**                                                                         24

| | | |
|---|---|---:|
| 1 | **15 CCR § 3084.7** | 24 |
| 2 | **15 CCR § 3313** | 22 |
| 3 | **15 CCR § 3314** | 22 |
| 4 | **15 CCR § 3315** | 22 |
| 5 | **15 CCR § 3360** | 28 |
| 6 | **15 CCR § 3369.1** | 22 |
| 7 | **15 CCR § 3369.1(2)** | 23 |
| 8 | **15 CCR § 3375** | 21 |
| 9 | **15 CCR § 3375(c)** | 21, 28 |
| 10 | **15 CCR § 3375(e)** | 22, 28 |
| 11 | **15 CCR § 3375(f)(1)** | 22, 28 |
| 12 | **15 CCR § 3375(f)(4)** | 23 |
| 13 | **15 CCR § 3901.5.1** | 28 |
| 14 | **15 CCR § 3901.5.2** | 28 |
| 15 | **15 CCR § 3901.17.1** | 22 |
| 16 | **15 CCR § 3901.17.2** | 22 |
| 17 | **15 CCR § 3901.17.5** | 22 |
| 18 | | |
| 19 | **CALIFORNIA CODE OF CIVIL PROCEDURES** | |
| 20 | **§ 430.10** | 73 |
| 21 | **§ 430.30** | 73 |
| 22 | | |
| 23 | **CALIFORNIA GOVERNMENT CODE** | |
| 24 | **§ 11340** | 4, 30 |
| 25 | **§ 11340.5** | 31 |
| 26 | **§ 11340.5(a)** | 31 |
| 27 | **§ 11342(g)** | 5 |
| 28 | **§ 11342.600** | 31 |

# **PENAL CODE SECTIONS**

| | |
|---|---|
| **Penal Code § 69** | 48 |
| **Penal Code § 261** | 7, 17, 76 |
| **Penal Code § 261(a)(2)** | 17, 34, 67 |
| **Penal Code § 262(a)(1)** | 34, 67 |
| **Penal Code § 264.1** | 34, 67 |
| **Penal Code § 286** | 34, 67 |
| **Penal Code § 288a** | 34, 67 |
| **Penal Code § 288(a)** | 7, 14, 17, 34, 50, 60, 67, 76 |
| **Penal Code § 288(b)** | 34, 67 |
| **Penal Code § 289(a)** | 34, 67 |
| **Penal Code § 314.1** | 7, 8, 14 |
| **Penal Code § 667.5** | 77 |
| **Penal Code § 667.5(f)** | 78 |
| **Penal Code § 668** | 65, 66 |
| **Penal Code § 1003** | 73 |
| **Penal Code § 1004** | 73 |
| **Penal Code § 1004(1)** | 73 |
| **Penal Code § 1005** | 74 |
| **Penal Code § 1168** | 27 |
| **Penal Code § 1170** | 27, 36 |
| **Penal Code § 1203.066(c)(1)** | 18 |
| **Penal Code §§ 2400 - 2402** | 27 |
| **Penal Code § 2645** | 27 |
| **Penal Code § 2960** | 28 |
| **Penal Code §§ 2681 - 2684** | 28 |
| **Penal Code § 3000** | 36 |
| **Penal Code § 3000(b)(1)** | 36, 38 |

x

**Penal Code § 3000(b)(7)** 27

**Penal Code § 3056** 41, 49

**Penal Code § 3057(b)** 36, 38

**Penal Code § 3060** 28

**Penal Code §§ 5001 - 5003** 27

**Penal Code § 5054** 27

# WELFARE AND INSTITUTIONS CODE

§ 5325 42

§ 5327 44

§ 6250 9

§ 6600 2, 4, 5, 8, 9, 13, 15, 16, 17, 28, 29, 54, 55, 57, 59, 63

§ 6600.05 42

§ 6600(a) 9, 10, 59, 63, 64, 66, 67, 70, 78

§ 6600(b) 14, 29, 59, 66, 67

§ 6601 9, 28, 35, 53

§ 6601(a) 9, 30, 35

§ 6601(b) 4, 10

§ 6601(d) 61

§ 6601(h) 29, 30, 54

§ 6601(i) 54

§ 6601.3 28, 35, 36, 37, 51

§ 6601.5 28, 35, 37

§ 6602(a) 37

§ 6602.5 60, 74

1

## **TREATISES**

**Van Alstyne**, Cracks in the "New Property": *Adjudicative Due Process in the*

*Administrative State* (1977) 62 Cornell L. Rev. 445       12

## **STATUTES (LEGISLATIVE ENACTMENTS)**

**Stats. 1995, ch. 762, §3, Senate Bill 1143**       9, 10

**Stats. 1995, ch. 763, §3, Assembly Bill 888**       9, 10, 28, 29

**Stats. 1996, ch. 4, §§2, 3, Assembly Bill 1496**       35

**Stats. 1996, ch. 197, §20, Assembly Bill 3483**       42

**Stats. 1996, ch. 462, §4, Assembly Bill 3130**       75, 78

## **OHIO CODE SECTIONS**

**Ohio Revised Code § 2907.02**       7, 17, 77

**Ohio Revised Code § 2907.05**       7, 17, 60, 76, 77

# **Exhibits For Exhaustion**

Exh. Ap. 1   Superior Court 'Minute Order'   Dept. 116
Petition For Writ Of Habeas Corpus "DENIED" (06-19-2008) (1 page)

Exh. Ap. 2   Court Of Appeals 'Order'
Petition For Writ Of Habeas Corpus "DENIED" (12-10-2008) (2 pages)

Exh. Ap. 3   California Supreme Court   "En Banc"  'Order'
Petition For Writ Of Habeas Corpus "DENIED" (09-30-2009) (1 page)

# **Table of Exhibits**

| **Exhibit** | **Description** |
| --- | --- |
| Exh. 1 | "DCJ Report" |
| Exh. 2 | "Ohio Journal Entry" (Page 1: Conviction; Page 2: Sentencing) |
| Exh. 3 | "CLETS Printout" (3 pages) |
| Exh. 4 | "California Abstract of Judgment" (Case No. A 766947 (2 pages)) |
| Exh. 5 | CDC Central File "Chronological History Sheet" |
| Exh. 6 | "California Abstract of Judgment" (Case No. BA 080477) |
| Exh. 7 | "Legal Status Summary Sheet" (Dated: 07-26-95.) |
| Exh. 8 | "SVP Pre-screening Form" (Dated: 01-29-96.) |
| Exh. 9 | "Memorandum and Referral" (Dated: 04-15-96.) |
| Exh. 10 | "Sexually Violent Predator Record Review Forms" (Dated: 04-23-96, 3 pgs.) |
| Exh. 11 | "Notification of Evaluation as a Sexually Violent Predator Consent for Interview" Forms. (Dated: 05-06-96. 2 pages.) |
| Exh. 12 | "Sexually Violent Predator Civil Commitment Clinical Evaluation Summary" (2 pages, Dated: 05-17-96 and 05-20-96 respectively.) |
| Exh. 13 | Board of Prison Terms "Summary of Probable Cause Hearing" (Dated: 05-21-96. 5 pages, with Petitioner's typed page as page 6.) |
| Exh. 14 | "Health History Summary" (Dated: 05-22-96.) |
| Exh. 15 | "Holds and Notifications" Legal Status Sheet (Dated: 05-24-96.) |
| Exh. 16 | "Department of Mental Health Referral" (Dated: 05-29-96, Stamped: Received, June 04, 1996.) |

Exh. 17   "Ohio Criminal History Sheet" (Dated: 06-13-96.)

Exh. 18   "Affidavit for Attendance" (Dated: 06-14-96.)

Exh. 19   "Petition and Affidavit" Case No. ZM 001979 (Dated: 06-18-96.)

Exh. 20   "Los Angeles County Jail Booking Record" (Dated: 06-25-96.)

Exh. 21    Superior Court "Minute Order of Arraignment" (Dated: 06-27-96.)

Exh. 22   "Arraignment Transcript" (Transcribed on April 09, 2002, and filed on April 12, 2002, Mailed to Petitioner May 01, 2002.)

Exh. 23   "Letter from Janet Greenberg" (Dated: May 01, 2002.)

Exh. 24   Petitioners "Declaration of Issues Presented at Arraignment" (Dated: May 15, 2002.)

Exh. 25   "Minute Order For Transfer" (Dated: 08-02-96.)

Exh. 26   "Letter from Attorney Nancy Ramseyer" (Dated 03-03-97.)

Exh. 27   "Warrant", per Penal Code § 3056 (Dated: 01-20-98.))

Exh. 28   "Social Services Discharge Summary" (Dated: 01-21-98)

Exh. 29   "HOLD RECEIPT", (Dated: 01-21-98.)

Exh. 30   "Hearing Summary and Decision", 4 Pages (Dated: 03-06-98.)

Exh. 31   "CDC 128G Chrono", (Dated: 03-19-98.)

Exh. 32   "CDC-128G Chrono", (Dated: 04-16-98.)

Exh. 33   "Parole Violator Legal Status Summary" (Dated: 04-29-98.)

Exh. 34   "Notice and Conditions of Parole" (Dated: 05-05-98.)

Exh. 35   "Holds and Notification" Legal Status Sheet (Dated: 06-12-98.)

Exh. 36   "Amended Petition and Affidavit" (Dated: 08-06-99.)

Exh. 37   "Letter to Honorable Judge Harold Shabo", 2 pages, (Dated: 09-21-00.)

Exh. 38   "Letter to Attorney Glatzhofer, (2 Letters)(Dated: 07-07-02.)

# **Table Of Attachments**

| **Attachments** | **Description** |
| --- | --- |

**'A'**    **Trial Transcript**
[16 pages] (Dated: 02-03-87.)

**'B'**    **Ohio Revised Code § 2907.02, Rape, circa 1974**
[1 page]

**'C'**    **Ohio Revised Code § 2907.05, Gross Sexual Imposition, circa 1974**
[1 page]

**'D'**    **California Penal Code §§ 261 - 290, circa 1974**
[7 pages]

**'E'**    **Evaluation by Dr. Jatinder Singh** (Dated: 05-06-96.)
(First and last page only) [2 pages]

**'F'**    **Evaluation by Dr. Patricia Kirkish** (Dated: 05-13-96.)
(First and last page only) [2 pages]

**'G'**    **Face page of Class action pleading to the California Supreme Court.**
[1 page]

**'H'**    **Copies of Handwritten Notes and Requests;**
**Legal Agenda to Nancy Ramseyer.** [7 pages]

**'I'**    **Senate Bill 1143, Sexually Violent Predators Act**
**Stats. 1995, ch. 762, §3, as passed** [6 pages]

**'J'**    **Assembly Bill 888, Sexually Violent Predators Act**
**Stats. 1995, ch. 763, §3, as passed** [6 pages]

**'K'**    **15 CCR § 2600.1,  Register 95, No. 52;**
**12-29-95, OAL File No. 95-1214-02** [4 pages]

**'L'**    **Assembly Bill 888, Introduced, Dated February 22, 1995,**
**Section 6601(e), at page 4** [7 pages]

**'M'**    **Assembly Bill 888, Amended, Dated April 17, 1995,**
**Section 6600(b), at pages 3 and 5** [10 pages]

**'N'**    **Assembly Bill 888, Amended, Dated April 25, 1995,**
**Section 6602, and Section 6603(e) at page 5** [8 pages]

**'O'**    **Assembly Bill 888, Amended, Dated May 31, 1995,**
**Section 6601(h), at page 4 and Section 6603(e) at page 5** [8 pages]

**'P'**    **Assembly Bill 888, Amended, Dated July 17, 1995,**
**Section 6601(a) at page 3, and Section 6602 at page 5** [8 pages]

xv

1  'Q'    15 CCR § 2600.1,  Register 96, No. 23;
2         6-7-96, OAL File No. 96-0424-03 [4 pages]

3  'R'    15 CCR § 2600.1,  Register 97, No. 4;
          1-24-97, OAL File No. 97-0115-01 [3 pages]

4  'S'    Assembly Bill 1496, Sexually Violent Predators
5         Stats. 1996, ch. 4, §§ 2 and 3, as passed [3 pages]

6  'T'    Letter From George Bukowski to Norman Hubbs,
          RE: Screening Instrument [1 page]

7  'U'    Coalinga State Hospital's
8         Patient Access System (PAS) Manual [10 pages]

9  'V'    Gerald Rogers v. Superior Court (1999)
          (Unpublished) [2 pages]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eli Toney DelRay CO # 000155-2
Coalinga State Hospital
24511 West Jayne Avenue
P.O. Box 5003   Unit 12
Coalinga, Calif.   93210-5000

**In Propria Persona**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br><br>**ELI TONEY DELRAY,**<br><br><br>On Habeas Corpus. | No. _____<br><br>**State Supreme Court No. S172450**<br>Cal.App. No. B211946<br>Superior Ct. No.  ZM 001979<br>In Re:  CRIM.  A 766947<br><br>PETITION FOR WRIT OF HABEAS<br>CORPUS BY A PERSON IN<br>STATE CUSTODY<br>**28 U.S.C. § 2254** |

**TO THE HONORABLE JUSTICES OF THE UNITED STATES DISTRICT**

**COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

1.      Comes now, Eli Toney DelRay, **illegally detained since May 21, 1996,** for issuance of a Writ of Habeas Corpus releasing him from the illegal detention *pursuant to a petition to stand trial* as a Sexually Violent Predator ***filed on June 18, 1996,*** and by this verified petition, state as follows:

### VENUE

2.      Petitioner is currently detained at Coalinga State Hospital by Pam Ahlin, Executive Director.

3.      The detention order pending a civil trial was made by the Honorable Harold Shabo, Judge, of Dept. 95 of the Los Angeles Superior Court on **June 27, 1996.**

1

1    **4.**    The detention order pending trial was brought pursuant to a Petition for Commitment

2    under California's Sexually Violent Predator Act.

3    **5.**    California's Sexually Violent Predator's Act is codified by California's **Welfare and**

4    **Institutions Code §§ 6600-6608.**

5    **6.**    The Petition for Commitment is filed under **Case # ZM 001979**.

6    **7.**    Petitioner Demurred to the Petition at arraignment on **June 27, 1996,** on a claim that

7    the court lacked jurisdiction.

8    **8.**    Petitioner has filed Writs of Habeas Corpus challenging the detainment for trial order

9    on jurisdictional and constitutional grounds in California's Court system.

10    **9.**    **A.** Writ Filed: 6-10-08, Case # ZM 001979, *Los Angeles Superior Court*, Dept. 116.

11    **B.** Grounds presented:

12
### I.

13
**PETITIONER WAS DENIED DUE PROCESS AND RIGHT TO ATTORNEY BY THE DEPARTMENT OF CORRECTIONS AND DEPARTMENT OF MENTAL HEALTH DURING SCREENING FOR THE SEXUALLY VIOLENT PREDATOR ACT IN VIOLATION OF THE 1ST, 5TH, 6TH, AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION...**

14

15

16

17
### II.
**PETITIONER WAS DENIED DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL, AND RIGHT TO CONFRONTATION OF WITNESSES, WHEN THE CALIFORNIA BOARD OF PRISON TERMS ILLEGALLY SEIZED AND DETAINED PETITIONER IN VIOLATION OF THE $1^{TH}$, 4TH, 5TH, 6TH, 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

18

19

20

21

22
### III.

23
**PETITIONER WAS ILLEGALLY SEIZED AND IMPRISONED BY THE CALIFORNIA DEPARTMENT OF MENTAL HEALTH WITHOUT A LAWFUL COURT ORDER OR DUE PROCESS IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 8TH, AND 14TH, AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

24

25

26

27
### IV.

28
**RICK VAGNOZZI, LOS ANGELES COUNTY DEPUTY DISTRICT ATTORNEY, INTENTIONALLY MISLED THE**

**COURT IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 6068 AND CAUSED THE ILLEGAL RESTRAINT OF PETITIONER IN VIOLATION OF THE 1st, 4th, 8th AND 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

**V.**

**THE SUPERIOR COURT DID NOT HAVE JURISDICTION TO ARRAIGN PETITIONER OR HOLD A PROBABLE CAUSE HEARING AND THIS ACTION VIOLATED THE RIGHTS GUARANTEED BY THE 1st, 4th, 5th, 6th, 8th AND 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

**C.** Writ denied on 6-10-08, by Minute Order. **(See exhibit Ap. 1)**

**D.** Petitioner received a continuance to pursue his Writ in the Court of Appeals.

**10.** Petitioner filed a new Original Writ in the California Court of Appeals. The grounds presented were exactly the same as those filed in the Superior Court as stated above.

**A.** Writ Filed: 11-07-08, Case # B211946, *Court of Appeal, Second Appellate District, Division Five.*

**B.** Grounds presented are exactly the same as those presented above.

**C.** Writ denied on 12-10-08, by Order of the Court of Appeals.

**D.** The Court gave a one page denial. **(See exhibit Ap. 2)**

**11.** Petitioner filed a new Original Writ in the California Supreme Court. The grounds presented were exactly the same as those filed in the Superior Court and the Court of Appeals, as stated above.

**A.** Writ Filed: 4-27-09, Case # S172450, *California Supreme Court.*

**B.** Grounds presented are exactly the same as those presented above.

**C.** Writ denied En Banc on 9-30-09, by citation. **(See exhibit Ap. 3)**

**D.** Petitioner has fully offered all grounds to the California Courts for purposes of exhaustion and has not had any formal determination of his pre and post arraignment Constitutional Claims.

**12.** Petitioner now presents the exact same grounds to this Court as presented to the California Courts.

3

**INTRODUCTION**

**13.** Petitioner has, since May 21, 1996 been unlawfully incarcerated and intentionally deprived of his liberty by acts and actions in excess of the jurisdiction of multiple administrative agencies. In particular, the California Department of Corrections, (and/or: CDC) the California Department of Mental Health, (and/or: DMH) the California Board of Prison Terms, (and/or: BPT) and as an enforcement agency of the state, the Los Angeles County Office of the District Attorney. Petitioner contends that these acts and actions violated due process and his rights as protected by the 1st, 4th, 5th, 6th, 8th, and 14th Amendments of the United States Constitution, and those comparable rights under the California Constitution.

**14.** Petitioner contends that the California Department of Corrections denied Petitioner due process protections when it screened and applied the Sexually Violent Predator Act, (and/or: SVP, SVP Act, or the Act) pursuant to Welfare and Institutions Code § 6600 et seq. (Here-in-after: W&I §§.) As the first enumerated administrative agency to apply the SVP Act, CDC failed to provide due process protections in violation of the decisions in Fuentes v. Shevin (1972) 407 U.S. 67, 81 [92 S.Ct. 1983] and Wolff v. McDonnell (1974) 418 U.S. 539, 564, or the legislative mandates of the Administrative Procedures Act, (Cal. Government Code §§ 11340 et seq.). These violations of rights encompass the 1st, 5th, 6th, and 14th Amendments of the United States Constitution, which guarantees these protections to the citizens of every state.

**15.** Petitioner contends that the Department of Mental Health, as a separate agency, also denied due process protections to Petitioner when it screened, evaluated and applied the SVP Act, while failing to implement a "structured screening instrument" as declared by legislative mandate in Welfare and Institutions Code § 6601(b). The process used violated the decisions in Vitek v. Jones (1980) 445 U.S. 480; Morrissey v. Brewer (1972) 408 U.S. 471, and the Administrative Procedures Act, (Cal. Government Code

4

§ 11342(g)). These violations of rights further encompass those of the 1st, 5th, 6th, and 14th Amendments of the United States Constitution, which guarantees these protections to the citizens of every state.

16.   Petitioner contends that the procedures used by the California Board of Prison Terms allowed a hearing that violated due process as outlined in Vitek v. Jones (1980) 445 U.S. 480, Specht v. Patterson (1967) 386 U.S. 605, and Estelle v. Smith (1981) 451 U.S. 454, 469-470, as well as in violation of the 1st, 4th, 5th, 6th, 8th, and the 14th Amendment of the United States Constitution, which guarantees these protections to every citizen.

17.   Petitioner contends that the petition for commitment pursuant to W&I Code §6600 et seq., as a Sexually Violent Predator, filed on June 18, 1996 was jurisdictionally barred for lack of probable cause and compliance, with the qualifying criteria of the SVP Act. Other procedural defects, including intentionally fabricated declarations presented to the court by Deputy District Attorney Rick Vagnozzi aided in delayed justice, which subsequently led to a finding of probable cause by the court on May 25, 2000, four (4) years after the fabricated representations to the court. This finding was in error and has caused petitioner the grievous harm of being unjustly confined and has denied petitioner due process and the protections guaranteed by the 1st, 4th, 5th, 8th, and 14th Amendment of the United States Constitution.

18.   Petitioner, though currently appointed competent counsel, Deputy Public Defender Karen King, was previously deprived of meaningful representation at the critical stages of these proceedings, both administratively and judicially, starting with the appointment of J. Glatzhofer, at the Board of Prison Terms hearing on Petitioners release date, where counsel's presence and arguments were ignored and treated as if they were not worthy of legal consideration, through petitioners arraignment and probable cause hearing in violation of the decision in Strickland v. Washington (1984) 466 U.S. 668, 684-686. The

cumulative nonchalant manner in which petitioner's rights were ignored and trampled, show specific intent to deny petitioner due process and other protections as guaranteed by the 1st, 4th, 5th, 6th, 8th, and 14th Amendment Of The United States Constitution.

**Grounds, Argument**

**Points And Authorities**

**I.**

**PETITIONER WAS DENIED DUE PROCESS AND RIGHT TO ATTORNEY BY THE DEPARTMENT OF CORRECTIONS AND DEPARTMENT OF MENTAL HEALTH DURING SCREENING FOR THE SEXUALLY VIOLENT PREDATOR ACT IN VIOLATION OF THE 1ST, 5TH, 6TH, AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION...**

**Facts Germane To Ground One:**

**19.**   03-20-75   Petitioner was convicted, by jury, State of Ohio, County of Cuyahoga, **Case No. 15641: Ohio RC § 2907.02**, Rape, 2 Counts; **Ohio RC § 2907.05**, Gross Sexual Imposition, 1 Count; Offenses involved two (2) victims. **(Exh. 2, pg. 1, "Ohio Journal Entry, Conviction.")**

**20.**   04-08-75   A.   Petitioner was sentenced to two (2) terms of 7-25 years for the Rape counts and one (1) term of 2-5 years for the Gross Sexual Imposition Count, to run consecutively, for a total *indeterminate* term of 16-55 years. **(Exh. 2, pg. 2, "Ohio Journal Entry, Sentencing.")**

**21.**   01-29-87   Petitioner was convicted by jury, Los Angeles County, **Case No. A 766947: Penal Code § 288(a)**, Lewd and Lascivious Acts on a Child under the age of 14; Three (3) counts; Offense involved one (1) victim. **(Exh. 4, pg. 1, "Abstract of Judgment".)**

**22.**   02-02-87   A.   Petitioner had a Bifurcated Trial by Court, and argued statutorily required elements by the comparison of the Ohio Revised Code and the California Penal Code as existed in 1974. The elements were fully litigated.. *(Trial Transcript from 02-02-87 unavailable.* **Attachments 'B', Ohio Revised Code § 2907.02; 'C', Ohio Revised Code § 2907.05 and 'D' California Penal Code §§ 261 - 290.)**

**23.**   02-03-87   B.   Closing arguments on issue of prior, Court ruling **"NOT TRUE"**, as a factual finding. **(Attachment 'A' id, at pg. 1379, lines 6-9, and Exh. 4, pg. 2, "Minute Order".)**

**24.**   02-24-87   C.   Petitioner was sentenced to a consecutive total determinate term of 12 years. **(Exh. 4, id. Pg. 1, "Abstract of Judgment".)**

**25.**   03-19-92   D.   Petitioner paroled, under the Determinate Sentence Law (DSL) **(Referenced Exh. 5, pg. 1 of CDC Central File "Chronological History Sheet", (Dated 03-13-92).)**

**26.**   07-10-93   Petitioner's parole was revoked, by parole agent, and approximately 45 days later, was charged with violating **California Penal Code § 314.1.** (Not SVP qualifying offense.)

| | | |
|---|---|---|
| **27.** | 11-19-93 | Petitioner was convicted, by jury, **Case No. BA 080477, California Penal Code § 314.1,** Indecent Exposure with prior 288. **(Exh. 6 "Abstract of Judgment".)** |
| **28.** | 12-01-93 | A.   Petitioner was sentenced to three (3) years. **(Exh. 6, id.)** |
| **29.** | 05-30-95 | B.   Petitioner paroled. DSL Act. **(Referenced. Exh. 5, pg. 2.)** |
| **30.** | 07-26-95 | C.   Petitioner's parole was revoked, returned to custody, for a ten (10) month revocation, release date of 05-21-96. **(Exh. 7, "Legal Status Summary Sheet".)** |
| **31.** | *01-01-96* | By a Legislative act, **Welfare and Institutions Code § 6600 et. seq.,** entitled, "The Sexually Violent Predator Act", (SVP), became effective this day. |
| **32.** | 01-29-96 | An SVP Pre-screening form was completed by Correctional Counselor I, Garcia, who disregarded the forms stated qualifying criteria. **(Exh. 8, "SVP Pre-screening Form".)** |
| **33.** | 02-08-96 | The SVP Pre-screening form was reviewed by Classification and Parole Representative (Acting) Penny, with a designation of "Possible", noted at the top of the page. Petitioner was never notified or personally interviewed about the information relied on. **(Exh. 8, id. "SVP Pre-screening Form".)** |
| **34.** | 03-13-96 | A 60 day pre-release audit was conducted of Petitioners CDC Central File. Discharging **California Case No. A 766947. (Referenced by Exh. 5, id., pg. 2, at line 11.)** |
| **35.** | 04-15-96 | A Memorandum to Steven Mayberg, Director, Department of Mental Health, with a three (3) page attachment, authored by retired Parole Agent II, Linda Dossey; the Board of Prison Terms Chairman, James W. Neilson; and Department of Corrections Director, James H. Gomez, where they state that Petitioner had been screened by both departments, and met the qualifying criteria, including **"received qualifying sentence(s)".** Petitioner was neither interviewed for or informed of this referral. **(Exh. 9, "Memorandum and Referral".)** |
| **36.** | 04-23-96 | A Sexually Violent Predator Record Review form and a Qualifying Criteria form were completed, again without interviewing Petitioner, or notification of the information relied on. **Forms were completed after referral noted in paragraph 35. (Exh. 10, "Sexually Violent Predator Record Review Forms", (3) pages.)** |
| **37.** | 05-03-96 | A **pre-emptive 72 hour parole hold** was placed, **effective 05-21-96 thru midnight 05-24-96,** with directions to hold a **"Probable Cause Hearing"** per **"Miscellaneous Decisions".** No notice of hold, or pending Probable Cause Hearing was given to Petitioner. **(Exh. 5, id. at page 2, lines 14-19.)** |
| **38.** | 05-06-96 | A two (2) hour conference-type evaluation was conducted by Dr. Patricia Kirkish and Dr. Jatinder Singh, with Dr. Singh asking only one (1) question. **(Exh. 11, "Notification of Evaluation as a Sexually Violent Predator Consent for Interview" forms. (2) pages.)** |

**39.**   05-06-96   A Sexually Violent Predator evaluation was completed by Dr. Jatinder Singh, stating that Petitioner met the qualifying SVP criteria. Dr. Singh typed her report during the interview. (**First and last page included as Attachment 'E'. Petitioner's use of Attachment 'E' is limited to narrow issue.**)

**40.**   05-13-96   A Sexually Violent Predator evaluation was completed by Dr. Patricia Kirkish, stating that Petitioner met the qualifying SVP criteria. (**First and last page included as Attachment 'F'. Petitioner's use of Attachment 'F' is limited to narrow issue.**)

**41.**   05-17-96   Petitioner was formally notified of "72 hour hold", by Institutional Chrono 128-B, at Friday evening mail call. (**Exhibit unavailable.**)

**42.**   05-17-96   A Sexually Violent Predator Civil Commitment Clinical Evaluation Summary, was prepared by Dr. Jatinder Singh. (**Exh. 12, page 1 of 2.**)

**43.**   05-20-96   A Sexually Violent Predator Civil Commitment Clinical Evaluation Summary, was prepared by Dr. Patricia Kirkish. (**Exh. 12, page 2 of 2.**)

**44.**   05-20-96   Both summaries were sent by fax to the Board of Prison Terms. (**Note the top edges of Exh. 12, pages 1 and 2, for fax information.**)

**A. The Legislative Act:**

**45.**   On October 11, 1995, the Sexually Violent Predator Act (Hereafter SVP or the Act) was enacted, effective January 1, 1996. (See **Attachment "I", Stats. 1995, ch. 762, §3, Senate Bill 1143, and Attachment "J", Stats. 1995, ch. 763, §3, Assembly Bill 888.**)

**46.**   It constituted an amendment to **Welfare and Institutions Code §6250, ("W&I"),** and added to the same code an **Article 4.** Commencing with **§6600, Article 4** comprises the statutes governing the determination and commitment of a person deemed to be a "Sexually Violent Predator".

**47.**   By Legislative design, the SVP Act of California may be invoked against only those individuals who are in the physical custody of the Department of Corrections, (CDC) (**See W&I §6601(a)).** The procedures set forth in **§6601** make this point self evident. More-over, those individuals who are intended to be within the purview of this law have been clearly articulated by the Legislature. (**See §6600(a)).**

**48.**   The Legislature gave permissive authority to the Director of Corrections to determine who may qualify for the screening under the SVP Act. (**§6601(a)).** Once that determination has been made, the procedures for screening become mandatory and

9

provides that the person be screened by both the California Department of Corrections and the California Board of Prison Terms (BPT), by a structured screening instrument developed by the California Department of Mental Health (DMH) in consultation with the Department of Corrections (CDC). **(W&I §6601(b)).** It also included provisions for review of the person's social, criminal and institutional history. **(W&I §6601(b)).**

49. The original version of the statute and the *initial qualifying criteria*, (See **Attach. 'I' Stats. 1995, ch. 762, §3, Senate Bill 1143** and **Attach. 'J' Stats. 1995, ch. 763, §3, Assembly Bill 888**) which applied to Petitioner between January 29, 1996 and Petitioner's arraignment on June 27, 1996, are defined in **W&I Code §6600(a),** in pertinent part and numbered sequence, as:

    1. Conviction of a Sexually Violent Offense;

    2. Against *two* or more victims;

    3. For which he or she *received a determinate sentence...*

50. *The Act lists with specificity the offenses that qualify,* and requires these minimal requirements be met, before further referrals are made to DMH and BPT, for evaluations and probable cause, respectively.

### B. Established Due Process Requirements for Involuntary Commitment:

51. The permissive authority granted by the Legislature in the SVP Act, by it's own language, placed the administrative bodies of the California Department of Corrections, the California Board of Prison Terms, and the California Department of Mental Health, on notice that applying the SVP Act involved a massive curtailment of Petitioner's state created constitutional right to be released on parole as held in *People v. Burgener* (1986) 41 Cal.3d 505, 529, fn 12, and *McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023, 1028.

52. The Act, like other involuntary commitment schemes, calls for a massive curtailment of a constitutionally protected liberty right, which the United States Supreme Court has held on many occasions, requires full due process protections. In the seminal case *Vitek*

10

1    *v. Jones* (1980) 445 U.S. 480, the Court, upholding the District Court's decision in

2    *Miller v. Vitek* (Neb. 1977) 437 F. Supp. 569, stated:

3    **53.**   "... Because prisoners facing involuntary transfer to a mental hospital are
           threatened with immediate deprivation of liberty [445 U.S. 480, 496]
4          interests they are enjoying and because of the inherent risk of mistaken
           transfer, the District Court properly determined that the procedures similar
5          to those required by the Court in *Morrissey v. Brewer* (1972) 408 U.S.
           471, were appropriate in the circumstances present here."

6

7    **54.**   The Court further determined:

8    **55.**   "The notice requirement imposed by the District Court no more than
           recognizes that notice is essential to afford the prisoner an opportunity to
9          challenge the contemplated action and to understand the nature of what
           is happening to him. *Wolff v. McDonnell* (1974) 418 U.S. 539, 564..."

10   **56.**   The District Court held that to afford sufficient protection to the liberty interest it had

11   identified, the State was required to observe the following minimum procedures before

12   transferring a prisoner to a mental hospital:

13           "A.  Written notice to the prisoner that a transfer to a mental hospital is being
                considered;
14
15           B.  A hearing sufficiently after the notice to permit the prisoner to prepare, at
                which disclosure to the prisoner is made of the evidence being relied upon
16              for the transfer and at which an opportunity to be heard in person and to
                present documentary evidence is given;

17           C.  An opportunity at the hearing to present testimony of witnesses by the
                defense and to confront and cross-examine witnesses called by the state,
18              except [445 U.S. 480, 495] upon a finding, not arbitrarily made, of good
                cause for not permitting such presentation, confrontation, or cross-
19              examination;

20           D.  An independent decision-maker;

21           E.  A written statement by the fact-finder as to the evidence relied on and the
                reasons for transferring the inmate;
22
23           F.  Availability of legal counsel, furnished by the state, if the inmate is
                financially unable to furnish his own; and

24           G.  Effective and timely notice of all the foregoing rights." 437 F. Supp., at 575.

25   **57.**   Prior to *Vitek,* supra, the United States Supreme Court stated in *In re Gault* (1967)

26   387 U.S. 1, 29:

27   **58.**   "The United States Constitution...guarantees him rights and protections
           with respect to arrest, search and seizure, and **pre-trial interrogation.** It
28         would assure him of specific notice of the charges and adequate time to

11

decide his course of action and to prepare his defense. He would be entitled to clear advice that he could be represented by counsel,... the state would be required to provide counsel if... unable to afford it." (Emphasis added.)

**59.**   "Notice, to comply with due process requirements, must be given sufficiently in advance of court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." *Gault,* supra, at pg. 33.

**60.**   The California Supreme Court in *People v. Ramirez* (1979) 25 Cal.3d 260, at 268, established the test that has since been utilized by courts to evaluate due process claims under the California Constitution:

**61.**   "[T]he due process safeguards required for protection of an individual's statutory interest must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. (See Van Alstyne, Cracks in the "New Property": Adjudicative Due Process in the Administrative State (1977) 62 Cornell L. Rev. 445, 447.) This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity... (*Morrissey v. Brewer* (1972) 408 U.S. [471,] 481...)...[¶] More specifically, identification of the dictates of due process generally requires consideration of;

**(1)**   the private interest that will be affected by the official action,

**(2)**   the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,

**(3)**   the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and

**(4)**   the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (See *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 561...)" (*Ramirez*, supra, 25 Cal.3d at pp. 267-269.)

**62.**   Numerous California Courts, have applied the (*Ramirez*, supra,) test when addressing SVP procedural due process claims, as in *In re Parker* (1998) 60 Cal.App.4th 1453, at 1463, where the appellate court stated:

**63.**   "We also recognize that the Act provides numerous checks against the risk of erroneous deprivation of the prospective SVP's liberty interest."

**64.**   Likewise, the California Supreme Court, upholding the constitutionality of the Act in

12

*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, cited the statute on the premise that the ***person's*** due process rights were complied with throughout the SVP screening process by the separately empowered administrative agencies. The High Court stated:

**65.**   "The process for determining whether a convicted sex offender meets the foregoing criteria takes place in several stages, both **administrative** and **judicial**. Generally, the **Department of Corrections screens inmates in its custody who are "serving a determinate prison sentence or whose parole has been revoked"** at least six months before their scheduled date of release from prison. **(6601, subd. (a).) (Fn. 8 omitted.)**This process involves review of the inmate's background and criminal record, and employs a **"structured screening instrument"** developed in conjunction with the Department of Mental Health. **(id., subd. (b).)** If officials find the inmate is likely to be an SVP, he is referred to the Department of Mental Health for a "full evaluation" as to whether he meets the criteria in section 6600. **(§6601, subd. (b).) [pg. 1146]** (Bold emphasis added by Petitioner.)

**66.**   Notwithstanding the Courts interpretive rulings on the wording of the statute and its requirements of due process as guaranteed by the **United States Constitutions 1st, 5th, 6th, and 14th Amendments,** and the above findings concerning the SVP Act's multi-tiered due process protections, as Petitioner will show, the procedural reality, (with a partial exception to procedures used by the BPT), as applied by the separate administrative agencies, belie those principles of due process and consist entirely of a paper and record review done in a capricious, arbitrary and secretive manner, with flagrant disregard to Petitioner's and others protected rights.

### C. Absence of Procedures for SVP Screening Violated Due Process:

**67.**   California appellate courts have been consistent in holding that arbitrary actions of administrative agencies, even when the decisions are reached within statutory limitations are unconstitutional.

**68.**   In *Ramirez,* supra, the California Supreme Court specifically held that even when administrative agencies reach decisions within statutory mandates, *those decisions may not be reached by an arbitrary process and that the **individual** has the constitutional right to address the decision maker.*

**69.** This instant contention, as was **Ramirez',** does not challenge the statutory right of the Director of Corrections to screen and/or make the referral, it is simply contended that fundamental due process rights, the Department of Corrections own rules and regulations, and the **Administrative Procedures Act** provides the inmate a meaningful chance to be present and heard at any screening and/or hearing which may have an adverse effect upon the inmate.

**70.** Petitioner offers as evidence supporting his claim of due process violations, the undisputable verifiable facts and supporting exhibits mentioned in **paragraphs 32, 33,** commencing on January 29, 1996, where through some unknown process, petitioner was selected for the first stage of screening. Petitioner points to these particular documentary exhibits by the way they closely track the qualifying criteria as stated in **W&I §6600(b),** and because they were the first documents used for screening.

**71.** Beginning with the **Potential SVP Pre-screening Form** included as **exhibit 8, (paragraph 32)** completed on 01-29-96, by Correctional Counselor I, Garcia, it is apparent on its face that a number of incorrect and unsupported statements were made, to intentionally include Petitioner under the umbrella of the SVP Act.

**72.** This document, under the section titled, "Please identify specific sexually violent conviction", list the eight (8) "Offense[s]" required by **W&I Code §6600(b),** by their Penal Code Section numbers. It correctly identifies Petitioner's California conviction as **P.C. § 288(a)** on 01-29-87. Though it only shows the one (1) conviction, the third boxed section, under the title of, "Do conviction(s) indicate more than one victim?', is answered in the affirmative, thereby including the victims of Petitioner's Ohio conviction. It further shows the correct revocation release date (RRD) as 05-21-96, and incorrectly identifies Petitioner's current conviction offense as **P.C. § 288(a),** instead of **P.C. § 314.1.** (At this time, it must be stated that Petitioner was actually serving a 10 month parole revocation term attributable to the **P.C. § 314.1** conviction. See **Statement of Facts, Paragraph 30, and Exhibit 7.)** This document also shows the indecision involved with determining if Petitioner actually qualified under the Act, where it was reviewed on 02-08-96, by the

14

1  Classification and Parole Representative (C&PR), J. PENNY (A), and noted at the top

2  of the document as "Possible". Petitioner asserts that at this time, if not before, he was

3  entitled to notice, an opportunity to challenge the contemplated action and the

4  information being relied on, and the remedy of appeal.

### D. Notice is Fundamental to Due Process:

73.  "Ingrained in our concept of due process is the requirement of notice.
*Notice is sometimes essential so that the citizen has the chance to defend charges.* **Notice is required** before property interests are disturbed, **before assessments are made,** before penalties are assessed. Notice is required in a myriad of situations where a penalty of forfeiture might be suffered for mere failure to act." (***Lambert v. California*** (1958) 355 U.S. 225; ***People v. Swink*** (1984) 150 Cal.App.3d 1076, 1079.)

74.  **Paragraph 34** highlights those errors by showing that on 03-13-96, a 60 day pre-release audit was conducted of Petitioners CDC Central File, discharging Case #A766947, the same case noted as the current commitment offense on the above mentioned Pre-screening form. **(See exhibit 5, pg. 2, at line 11, of the CDC Central File "Chronological History Sheet", and exhibit 8, supra.)**

75.  **Paragraph 35** points out further arbitrary actions by CDC to include Petitioner within the parameters of the SVP Act, through the actual referral of Petitioner to DMH for evaluation, **prior** to CDC's completion of the screening process, by sending a Memorandum and attached three (3) page *conclusive* finding addressed to Steven Mayberg, Director, Department of Mental Health, dated 04-15-96. **(See exhibit 9, "Memorandum", and 3 page attachment, "Referral to Department of Mental Health...")**

76.  The "Memorandum", beside implying a completion of screening by CDC and BPT, misstates the facts of Petitioners case file and/or history. The second paragraph of this "Memorandum" proclaims:

77.  "Based on the **CDC/BPT** screening, this inmate meets the first level sexually violent predator criteria since he has been convicted of ***WIC 6600 qualifying offenses* against two or more victims** who were either strangers or where the relationship was established for the primary purpose of victimization, **and as a result received *qualifying***

*sentence(s).* **(Emphasis added by Petitioner.)**

**78.**   The actuality, at the time of this "Memorandum", and referral, was only one (1) of Petitioners convictions qualified as stated under the Act. Page one (1) of the referral, authored by retired Parole Agent II, Linda Dossey, under the heading **WIC 6600 Offense Convictions(s):** undeniably recounts petitioners Ohio conviction, with the Revised Code Sections and the indeterminate terms received, in direct contradiction of the SVP Act's, specifically listed qualifying criteria, as previously outlined on **page 10, paragraphs 49 and 50**, of this Writ. **(Also see page 7, paragraphs 19 & 20** for corresponding exhibits.)

**79.**   **Paragraph 36** introduces **exhibit 10, a three (3) page, SVP qualifying criteria form,** completed **after the referral** to DMH, dated 04-23-96, and presents the most compelling evidence of intentional acts by CDC to qualify petitioner, regardless of the plain language stated under **W&I Code §6600 et. al.** Page two (2) of this set, entitled, "Sexually Violent Predator Record Review Form", appears to be Petitioners history from Petitioner's CDC Central File and the Department of Justice Criminal History Sheet (rap sheet). Though the majority of this information could only have come from Petitioner's rap sheet, page three (3), added for "additional information", states: "no rap sheet available", which begs the question, how does a prison agency not have access to a inmates rap sheet? Petitioner believes this further shows an intent to wrongly include Petitioner under the umbrella of the SVP Act.

**80.**   Page one (1) of this set, in the reviewers box found in the upper right hand corner, states: MEETS WIC 6600 CRITERIA: with a check mark for affirmation, and under the bold typed title: QUALIFYING CRITERIA, 6600 W & I Sexually Violent Predator, the form is sectioned into three (3) parts, with columns labeled YES, NO, and IF NO - THEN, with check boxes for each question in the separate parts.

**81.**   **Section 1.**, titled "Convicted of sexually violent offense", recounts in the following two (2) lines, as criteria to be found, **Conviction of one or more of the crimes enumerated in this section for which he** or she **has received a determinate sentence,** (emphasis added by Petitioner). It further lists the eight (8) qualifying crimes as specified

16

1    by the version of W & I Code §6600 existing on 04-23-96.

2    **82.**   It further correctly identifies Petitioners California conviction of three (3) counts of

3    **P.C. § 288(a)**, which was against one (1) victim. It further incorrectly states that

4    Petitioner was convicted of **P.C. § 261(a)(2) Rape,** which is a completely fabricated

5    statement, and was intentionally made in order to include Petitioner under the purview

6    of the SVP Act.

7    **83.**   Immediately under the eight (8) qualifying California offenses, this document includes

8    four (4) exceptions to qualifying for the SVP Act. **The first exception:**

9    **1. OFFENSE NOT SPECIFIED IN WIC 6600:**

10   **84.**   Though Petitioner was convicted of Rape, it was under **Ohio's Revised Code Section**

11   **1199/2907.02,** with a lesser included of **Section 1199/2907.05,** as previously stated

12   herein, and therefore undeniably fits as an **"Offense <u>Not Specified</u> in WIC 6600",** and

13   should have been checked as a IF NO - Then response as called for on this document,

14   which would have negated qualification. **The second exception:**

15   **2. CHARGED BUT NOT CONVICTED:**

16   **85.**   Petitioner was at one time charged with P.C. §261, which was dismissed prior to a

17   preliminary hearing, and therefore, was not a conviction and would have also been

18   excluded under the IF NO - THEN column. **The third exception:**

19   **3. CONVICTED ON ONLY ONE CHARGE:**

20   **86.**   This parameter does apply to Petitioner due to his conviction of P.C. §288(a), and

21   still would be excluded under the IF NO - THEN column, due to the case only involving

22   one (1) victim. **The fourth exception:**

23   **4. DID NOT RECEIVE A DETERMINATE SENTENCE:**

24   **87.**   This exception further involves the information stated under "OFFENSE NOT

25   SPECIFIED IN WIC §6600". Petitioner's conviction in Ohio under the Revised Code,

26   carried sentences of indeterminate terms, to wit: 7-25 years for each Rape, **O.R.C.**

27   **§1199/2907.02,** and 2-5 years for Gross Sexual Imposition, **O.R.C. §1199/2907.05,** as

28   shown in the Statement Of Facts, and the corresponding exhibits, (**see page 7,**

17

1   **paragraphs 19, 20** id.) and therefore would also be excluded under the IF NO - THEN

2   column, undermining CDC's reliance on this particular offense, conviction and sentence.

3   **88.**   **Section 2.,** titled "Against two or more victims", continues the criteria by specifying

4   a minimum of two (2) victims, and as to this requirement, Petitioner only has one (1)

5   victim for which petitioner received a determinate term, which according to the statute

6   and the criteria, does not apply and would be excluded under the IF NO - THEN

7   column, and as previously shown, the other two (2) victims are from the Ohio

8   conviction, and therefore would not apply.

9   **89.**   **Section 3.,** titled "Predatory", though not a stated criteria under the Act, is used to

10   define conditions of justification for inclusion for screening. According to the language

11   used, any crime as listed may qualify as predatory, and gives the screener the option of

12   re-litigating the specifics of a crime, regardless of **factual legal findings made in a**

13   **court of law**, in violation of the principles of stare decisis, due process, ex post facto,

14   and double jeopardy. In Petitioners Case, No. A766947, a special condition was pled and

15   proven at jury trial that Petitioner occupied a special position of trust, to wit: family

16   member, pursuant to **Penal Code §1203.066(c)(1)**, with other special conditions dropped

17   by way of demurrer. Accordingly, a "FAMILIAL RELATIONSHIP" had previously been

18   established, by a court of law, and this conviction would also have been excluded under

19   the IF NO - THEN column. Likewise, without the Ohio conviction, the "ONLY ONE

20   VICTIM IS STRANGER OR CULTIVATED RELATIONSHIP", would apply, and it

21   would also be excluded under the IF NO - THEN column.

22   **90.**   Petitioner claims that this administrative agency (CDC), exceeded its authority by

23   failing to follow their own screening documentation by *including crimes and prison*

24   *terms* that were specifically not listed on the form or were excluded from the enabling

25   statute. Petitioner claims that this action was an impermissible change to the enabling

26   statute which had the effect of enlarging the statute. The courts have consistently ruled

27   that administrative agencies lack the authority to change or enlarge a statute, and

28   embracing this rule, California's Attorney General, observed at, *85 Ops. Cal. Atty. Gen.*

*11* (2002), that a regulation:

**91.** "would be invalid if they altered or impaired the Act's scope." (***People ex rel. San Francisco Bay Construction etc. Com. v. Smith***, supra, 26 Cal.App.4th at p. 122.) ""'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' [Citation.]"" (***Dyna-Med, Inc. v. Fair Employment & Housing Com.*** (1987) 43 Cal.3d 1379, 1389.)

**92.** As Petitioner has asserted, this screening and referral was accomplished in secret and without any due process protections, such as notice, a right to be heard, an attorney or other representative, and the right to appeal any adverse determinations. Petitioner claims that the manner in which the screening process was handled in Petitioner's case, could only be compared to that of a ex-parte hearing, of the type condemned by the Courts, in ***Conservatorship of Moore*** (1986) 185 Cal.App.3d 718 where it stated:

**93.** "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]'" (***Conservatorship of Moore*** (1986) 185 Cal.App.3d 718, at 725, *quoting **Mullane v. Central Hanover Bank Tr. Co.*** (1950) 339 U.S. 306.)

**94.** Indeed, in the context of an ex parte proceeding by which a prison physician sought permission to forcibly treat an inmate, even the California Supreme Court in ***Thor v. Superior Court*** (1993) 5 Cal.4th 725, indicated its disapproval of:

**95.** "Any proceeding that denies or limits any relevant party access to the proceedings and the opportunity to be heard," except "in cases of imminent danger to the life or health of the patient or a similar exigency." (***Thor v. Superior Court*** (1993) 5 Cal.4th 725, 733, fn. 2.) (As cited recently in ***Steers v. Lamkins*** (2002) 122 Cal.Rptr.2d 1, at page 11.

**96.** Petitioner has shown that he was never informed that these proceedings were being implemented against him, even though the documentary evidence submitted, show that the initial screening started on January 29, 1996, giving CDC more than enough time to properly hold hearings which would comport with standards of due process as held by the Courts. The Courts further condemning ex parte proceedings addressed its defective quality and its impact on due process, where the risk of an erroneous deprivation of an

19

1    affected interest could occur through the procedures used or by the absence of protective

2    procedures by proclaiming in **United Farm Workers of America v. Superior Court**

3    (1975) 14 Cal.3d 902 at 908, that:

4    **97.**   "Two basic defects are typical of ex parte proceedings. The first is a

5    shortage of factual and legal contentions. Not only are facts and law from
     the defendant lacking, but the moving party's own presentation is often

6    abbreviated because no challenge from the defendant is anticipated at this
     point in the proceeding. The deficiency is frequently crucial, as

7    reasonably adequate factual and legal contentions from diverse
     perspectives can be essential to the Court's initial decision..." (**United**

8    **Farm Workers of America v. Superior Court** (1975) 14 Cal.3d 902,
     908.)

9    **98.**   **Moore,** supra, recognized notice as "[A]n elementary and fundamental requirement

10   of due process." (Id. at page 725, quoting **Mullane v. Central Hanover Bank Tr. Co.,**

11   supra, 339 U.S. at page 314.) Notice, one key element of due process, has historically

12   been the primary factor for the Courts, when reviewing due process claims of

13   administrative procedures that impact vested rights, and on its importance has stated:

14   **99.**   "For government to dispose of a person's significant interests without

15   offering him a chance to be heard is to risk treating him as a nonperson,
     an object, rather than a respected, participating citizen."[Citation.]

16   (**Ramirez**, supra., 25 Cal.3d at pp. 267 - 268.) "Without notice to the
     person affected by governmental action, that action can be viewed as

17   "arbitrary" and "unfair." (**Anderson v. Superior Court** (1989) 213
     Cal.App.3d 1321, 1331.)

18   **100.** As shown by the statement of facts, the evidentiary exhibits, and the extensive

19   amount of time that was available for processing, there can be no showing of exceptional

20   cause, mistake of fact or law, to deny Petitioner his guaranteed due process rights in

21   such an invidious and arbitrary manner.

22

23              **E. Title 15 Provides Meaningful Due Process Protections:**

24   **101.** The Courts have long considered the governmental interest when considering due

25   process claims, and its fiscal impact on implementing additional procedural protections,

26   as previously stated at **paragraph 61, on page 12**, where the Court in **Ramirez, supra,**

27   (25 Cal.3d at pp. 267 - 269.), identified the dictates of due process, by listing four (4)

28   considerations, and Petitioner, after presenting evidence encompassing the first three (3),

now presents argument on the identified fourth consideration, which is:

**102.** ... **(4)** the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (See *Civil Service Assn. V. City and County of San Francisco*, supra, 22 Cal.3d 552, 561...)

**103.** Likewise, it has been held that whenever the government seeks to deprive a basic liberty, whether civil or criminal in nature, said defendant shall be provided due process. (*Armstrong v. Manzo* (1965) 380 U.S. 545; *In re Johnson* (1963) 62 Cal. 2d 325.)

**104.** It is perfectly clear under the dictates of the SVP Act, that Petitioner is subject to the loss of his liberty for years, possibly for the rest of his life, in a state mental institution. This loss of liberty invokes for SVP proceedings the "criminal" rights as guaranteed by the United States Constitution. Indeed, the High Court, in numerous opinions, has stated that in any hearing involving a liberty interest, the accused is entitled to the "full panoply" of constitutional rights that are guaranteed in state criminal proceedings, and that the rights attach to the accused **at the time adversary proceedings are** <u>**initiated**</u> **against him.** (See *Specht v. Patterson* (1967) 386 U.S. 605, 609; *Estelle v. Smith* (1981) 451 U.S. 454, 469 - 470; *Powell v. Alabama* (1932) 282 U.S. 45, 57, 71; *United States v. Wade* (1967) 288 U.S. 218 at 226 - 227.)

**105.** Procedurally, the Director's Rules (**California Code of Regulations, Title 15** (hereafter **"15 CCR".**)) provides rules, regulations, policies, and procedures specifically determining how the Director of Corrections shall affect the life and liberty considerations of each person committed to the custody of the Director. These procedures, <u>already existing</u>, are equally applicable to the SVP Act's due process requirements without the need for any additional fiscal or administrative burdens. **(See 15 CCR §§ 3001 and 3002.)**

**106.** Title 15 provides for periodic Classification Hearings, **(See 15 CCR § 3375)**, which include determinations affecting an inmate's placement within a facility, or transfer between facilities, **15 CCR § 3375(c).** It provides for **advance written notice** of any hearing for reasonable preparation time to discuss the matter to be considered, **15 CCR**

§ 3375(e). It provides *procedural safeguards where the hearing could result in an adverse effect,* **15 CCR § 3375(f)(1).** (Emphasis by Petitioner.)

**107.** Title 15 provides the criteria and conditions for the placement of Parole Holds, **15 CCR §§ 3901.17.1 and 3901.17.2, <u>and in all cases</u>,** it provides for **notification in <u>writing</u>** of the reasons for the parole hold, specifically, no later than seven (7) days after placement of the hold, **15 CCR § 3901.17.5,** and of the **right to <u>appeal</u> the decision warranting the hold.**

**108.** As shown in Petitioners **"Statement of Facts"** at **paragraph 37,** on 05-03-96, a preemptive 72 hour parole hold was placed on Petitioner, as proven by **Exhibit 5,** CDC Central File **"Chronological History Sheet"** at page 2, lines 14 - 19, without notice of any kind, completely disregarding the rights as stated in **15 CCR § 3901.17.5,** and Petitioner claims was a premeditated arbitrary action in excess of the administrative authority.

**109.** In furthering due process protections, **Title 15** directly addresses **Mental Health placement** and the **inmates right to a hearing. 15 CCR § 3369.1 et seq.,** and includes the minimum requirement of a **72 hour notice** of the hearing, which was completely ignored. In its broadest interpretation, Petitioners evaluation on 05-06-96, could be viewed as some type of hearing, but this clearly would fail any type of due process analysis. Here, Petitioner was notified by special emergency pass, **15 CCR § 3014,** to report to the medical center. The special pass carries a warning that failure to appear would result in a rule violation report, **(CDC 115),** which carries the potential penalty of extending a parole release date, **15 CCR §§ 3313, 3314 and 3315, et seq..**

**110.** Petitioner arrived at the medical center and met Doctors Patricia Kirkish, and Jatinder Singh. (See **"Statement of Facts" paragraph 38**). Petitioner originally refused to be interviewed, and when informed that the evaluation was for the purpose of determining whether or not Petitioner was a Sexually Violent Predator. (Petitioners first notice of the SVP Act.) Upon this refusal, Petitioner was told that failure to participate in the interview would result in an adverse (CDC 115) report to the parole board for parole

1  revocation proceedings.

2  **111.** Petitioner asked about having an attorney or staff representative, **15 CCR §**
3  **3369.1(2), and § 3375(f)(4),** and was specifically told that he couldn't have an attorney
4  or time to research the Sexually Violent Predator Act.

5  **112.** Petitioner, used to being interviewed about his convictions of sex offenses by
6  institutional doctors and even once by Federal Authorities conducting a study on sex
7  offense recidivism in 1990 or 1991, with grave misgivings, conceded to the interview
8  and signed the **"Consent for Interview"** forms. (See **Exhibit 11, "Notification of**
9  **Evaluation as a Sexually Violent Predator, Consent for Interview",** two (2) pages.)
10  Petitioner questioned the wording of the consent forms, and was told that they were
11  formalities, that the reports would be completed, regardless of whether or not Petitioner
12  participated.

13  **113.** With the threat of a negative report to the parole board foremost in Petitioners
14  thoughts, the interview, as previously stated, was conducted in a conference type manner,
15  with both evaluators present, and Dr. Kirkish asking all the questions, with only a token
16  question by Dr. Singh. (Petitioner has included the first and last pages of those two (2)
17  evaluations as **Attachment "E"** for Dr. Singh, and **"F"** for Dr. Kirkish, for limited issue
18  claims.)

19  **114.** According to **W&I Code § 6601(c),** the evaluators also had a duty to determine if
20  the predicate offenses qualified under the SVP Act, as "Defined in this article", and to
21  "evaluate the person in accordance with a standardized assessment protocol", (It must
22  also be noted at this time, that, according to George Bukowski, Chief of DMH, no
23  structured screening instrument existed. Petitioner asks the court to take judicial notice
24  of **Attachment 'T'**, a letter addressed to Norman Hubbs, from Chief George Bukowski,
25  stating that there is no structured screening instrument). Its plain that the evaluators listed
26  Petitioners offenses and the sentences received, as well as where the crimes were
27  committed (See **Attachments "E"** and **"F"**), but also intentionally disregarded the fact
28  that the SVP Act specifically did not include indeterminate sentences or out of state

23

offenses. (See the **1996 Evaluators Handbook**, where evaluators are directed to consider only the listed Penal Code Sections as qualifying offenses. Petitioners copy was confiscated as contraband material, by Atascadero State Hospital staff, during a *random, weekly property search.*)

**115.** As to the issues presently raised, **Title 15**, most importantly, **provides a right to appeal any departmental decision, action, condition, or policy** perceived by those individuals as **adversely affecting their welfare, 15 CCR § 3084.1 et seq..** It also provides for emergency appeals, **15 CCR § 3084.7 et seq.,** where the regular appeal time limits may result in serious and irreparable harm to the appellant.

**116.** Petitioner complains that this and any other right, absent proper procedures and protections that comport to due process standards, become non-existent, when, as here, actions are performed in an arbitrary and secretive manner. Petitioner cannot appeal a decision or challenge that which he knows nothing about.

**117.** In summation of the issues presented in this section, according to the first document discovered by Petitioner, the screening process began sometime around 01-29-96, approximately 114 days prior to Petitioners release date, thereby giving the initiating agency, CDC, more than adequate time to schedule a hearing, with notice of the issues to be determined, that would have provided Petitioner due process protections.

**118.** As the Courts have declared that the Act provides numerous checks against erroneous deprivation of the prospective SVP's liberty interest, (***In re Parker***, supra, 60 Cal.App.4th 1453, at 1463) and that those protections are provided in several stages, (***Hubbart v. Superior Court***, supra, 19 Cal.4th 1138) with those stages, as understood by Petitioner, being the initial screening and referral by the California Department of Corrections, as the first stage; the screening, evaluation and referral by the California Department of Mental Health, as the second stage; the screening and qualifying by the California Board of Prison Terms as the third stage; the review of the referral and qualifying information for filing a Petition by the committing counties District Attorney's Office as stage four; and the judicial review, findings and determinations of the

1    California Superior Court as stage five; and according to this hierarchical setting,
2    Petitioner has undeniably shown a complete failure of due process protections as to stage
3    one and two, the initial screening by CDC, and the evaluation stage by DMH,
4    respectively.

6    **Petitioners First Amendment Claim, as presented above:**

7    **119.** This failure of due process as shown above clearly denied petitioner his *right to be*
8    *heard* (opportunity to present his side, during the pre-screening process) *and petition the*
9    *government* (appeal to the administrative body, or screening committee) *for redress*
10   (remedy, correction of facts relied on) *of grievances* (a incorrect determination).

11   **Petitioners Fifth Amendment Claim, as presented above:**

12   **120.** The process as presented above clearly denied Petitioner his *right to not be*
13   *deprived of...liberty*, (an order holding petitioner in custody)...*without due process of law.*

14   **Petitioners Sixth Amendment Claim, as presented above:**

15   **121.** Further, Petitioner was also clearly denied his *right to be informed* (notice) *of the*
16   *nature* (screening for SVP) *and cause* (use of non-qualifying priors) *of the accusation,*
17   (commitment as a SVP).

18   **Petitioners Fourteenth Amendment Claim, as presented above:**

19   **122.** The United States Constitution guarantees these rights to Petitioner by way of the
20   **Fourteenth Amendment** and therefore inclusive to the argument presented, Petitioner
21   asks for relief, by way of this Writ, on the basis that he was intentionally denied due
22   process at these critical stages of SVP processing and as shown, his out-of-state crime,
23   with its resultant indeterminate term, was not a listed offense and did not qualify under
24   the express wording of the Act at the time Petitioner was screened and therefore, the
25   filed Petition for commitment, was without jurisdiction and should be dismissed, and
26   Petitioner released from custody.

27

28

## II.

**PETITIONER WAS DENIED DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL, AND RIGHT TO CONFRONTATION OF WITNESSES, WHEN THE CALIFORNIA BOARD OF PRISON TERMS ILLEGALLY SEIZED AND DETAINED PETITIONER IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### Facts Germane To Ground Two:

**123.** 05-03-96    A **pre-emptive 72 hour parole hold** was placed, **effective 05-21-96 thru midnight 05-24-96,** with directions to hold a **"Probable Cause Hearing"** per **"Miscellaneous Decisions".** No notice of hold, or pending Probable Cause Hearing was given to Petitioner. **(Exh. 5, id. at page 2, lines 14-19.)**

**124.** 05-17-96    Petitioner was formally notified of "72 hour hold", by Institutional Chrono 128-B, at Friday evening mail call. **(Exhibit unavailable.)**

**125.** 05-21-96    Petitioners Parole Revocation Release Date. **(Exh. 7, id. RRD is underlined.)**

**126.** 05-21-96    Petitioner reported to R & R, (Receiving and Release) per institutional pass, for release dress-outs, and final parole notification requirements.

    A.    A Sergeant and Officer came to R & R, and removed Petitioner to a Parole Board Hearing Room. Petitioner was then placed in waist chains, handcuffs, ankle chains, and locked in a holding cell.

    B.    While in the holding cell, an attorney, J. Glatzhofer, informed petitioner that he had been appointed by the Board of Prison Terms, to represent Petitioner at the Probable Cause Hearing. **(Exh. 13, "Summary of Probable Cause Hearing", page 1 of 6.)**

    C.    Petitioner, during a fifteen (15) minute interview, informed this attorney of the facts pertinent to the issue of the qualifying criteria for the act:

        1.    That Petitioner was coerced into speaking to the evaluators under threat of a CDC 115 Conduct Report being sent to the Board Of Prison Terms;

        2.    That the Ohio prior didn't qualify under the Act, because the Act didn't include out-of-state convictions;

        3.    That the Ohio prior also didn't qualify under the Act, because it resulted in an indeterminate term, and the Act specifically required determinate terms.

    D.    Deputy Commissioner Ramon Estrada conducted the Probable Cause Hearing and after Petitioners attorney raised the above and other issues, made a finding of Probable Cause and placed a hold on Petitioner pursuant to **California Code of Regulations, (CCR) 15**

**CCR § 2600.1,** for 45 days, effective 05-22-96 at 12:01 A.M., to expire 12:00 Midnight on 07-05-96. **(Exh. 13, id. Pages 2, 3, 4, and 5.)** Petitioner was further informed that the decision was final and unappealable.

127. ●● Due to the unclear copy of the summary, Petitioner has taken the liberty to type out pages 2 and 3 of the Boards decision, only for clarity and appeal to this Court to take judicial notice of such for readability, and is included as **Exh. 13, id. Page 6.** ●●

128. 05-22-96    A "Health History Summary" was done on Petitioner in preparation for transfer to DMH. **(Exh. 14, "Health History Summary".)**

129. 05-23-96    Petitioner was returned to Parole, Region III, transferred and retained at Atascadero State Hospital, per **15 CCR § 2600.1** for SVP proceedings. **(Exh. 9, id., lines 20-22.)**

130. 05-24-96    A Board of Prison Terms **"Holds and Notifications"** Legal Status Sheet was completed, by Lydia Romero, Sacramento, California. It specified Petitioners release date of 05-21-96, county of commitment and last criminal offense. It includes Petitioners first (1st) AT Number from Atascadero State Hospital as 045422-3. **(Exh. 15, "Holds and Notifications" Legal Status Sheet.)**

## A. The Authority of the California Board of Prison Terms:

131. The Board of Prison Terms serves as the parole authority for the State of California, **Penal Code § 3000(b)(7).** It conducts parole hearings for prisoners sentenced to a term of life with the possibility of parole, who are the only adult prisoners subject to such hearings under California law, **Penal Code § 1168.** Prisoners sentenced to lesser terms, under California's Determinate Sentencing Law, **Penal Code § 1170,** are released on parole dates that are computed by prison authorities pursuant to established rules.

132. The Department monitors the prisoners' behavior while on parole. It does so through the Parole and Community Services Division, **Penal Code §§ 2400 - 2402, 5001 - 5003, and 5054.** (Also see *Terhune v. Superior Court (Whitley)* (1998) 65 Cal.App.4th 864, 76 Cal.Rptr.2d 841, 847, (en banc) (parolee "under the legal custody of the department").**)** In addition, the Board conducts revocation hearings for parolees accused of violating conditions of parole, **Penal Code § 2645,** and revocation extension hearings for prisoners who allegedly commit an offense while incarcerated.

133. Further, by statute and regulations, the Board of Prison Terms must release inmates

27

and parolees in revoked status on their scheduled release dates, **15 CCR §§ 2741, 3075.2.** Appeals from parole revocation, parole revocation extension hearings, and other parole related issues are also conducted by the Board of Prison Terms, see **Penal Code § 3060, 15 CCR §§ 3901.5.1, and 3901.5.2 et seq..** The Board also has authority to hold hearings related to processing for Mentally Disordered Offenders, see **Penal Code §§ 2960, 2681 - 2684,** and **15 CCR § 3360 et seq.,** and now, processing for the newly enacted Sexually Violent Predators Act, **Welfare and Institutions Code §§ 6600, 6601, 6601.3, 6601.5 and 15 CCR § 2600.1.**

### B. The Pre-emptive 72 Hour Hold Was Unauthorized And Illegal:

**134.** As previously shown in the **Statement of Facts, at Paragraphs 37 and 123**, on 05-03-96, a 72 hour parole hold, was preemptively placed on Petitioner, effective 05-21-96 thru 05-24-96. (See **Exhibit 5 id., page 2, lines 14-19.**)

**135.** The placement of this hold is a determination affecting Petitioner pursuant to **15 CCR § 3375(c),** which directly impacts Petitioners release date as an adverse act, within the meaning of **15 CCR § 3375(f)(1),** and was done sufficiently in advance of Petitioner's release date to require notice pursuant to **15 CCR § 3375(e)**, and the Due Process Clause' of both, the California and United States Constitutions.

**136.** The placement of the hold was credited to **15 CCR § 2600.1, (Register 95, No. 52; 12-29-95, OAL File No. 95-1214-02 included as Attachment K)** which states in pertinent parts:

**137.**   (a)   The purpose of this section is provide a mechanism for screening parolees in revoked status and inmates under the Sexually Violent Predator Program (Welfare & Institutions Code section 6600 and following, chapter 763, statutes of 1995) where exceptional circumstances preclude an earlier evaluation and judicial determination of probable cause (Welfare & Institutions Code section 6602) prior to return to custody or release on parole.

**138.**   (b)   Upon notification from the Department of Corrections, Department of Mental Health, or Board of Prison Terms staff that there is some evidence to believe an inmate or parolee in revoked status is a sexually violent predator within the meaning of Welfare & Institutions Code section 6600, the board may order imposition of a temporary hold on the

28

inmate or parolee in revoked status for up to three (3) working days pending a probable cause hearing by the board...(emphasis by petitioner.)

**139.** The above cited portion of this regulation had been excluded from the completed version of **Welfare & Institutions Code § 6600, chapter 763, statutes of 1995.** This regulation was submitted to the California Office Of State Printing to be included in the 1996, Division 2, Edition of Title 15, after its initial introduction in the legislature, but prior to the final passing of the Act, **creating a premature regulation not authorized by an enabling statute.** Petitioner, in support of this claim, points to the history of the applicable language used in **AB 888**, which on February 22, 1995, at its introduction, addressed bringing people back into custody, and provided:

**140.**   **Section 6601(e)**   If the person being evaluated for commitment under this article is not currently in custody, evidence shall be shown that the person committed a recent overt act that indicates that he or she is likely to engage in sexually violent criminal behavior if not evaluated and committed pursuant to this article. If there is evidence of an overt act by a person not currently in custody, the Director of Corrections may cause the person to be brought into custody and placed in a facility designated by the director of Mental Health to facilitate evaluation and treatment and to ensure public safety. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections. (**See Attachment L, AB 888, dated 02-22-95, at page 4.**)

**141.** On April 17, 1995, **AB 888, Section 6600(b)** was *amended by removing a number of offenses that could be used as qualifying crimes.* It was reduced to eight   (8). **Section 6601(e)**, was also amended and because of additional subsections added to the Act, and with a slight change in language, became **Section 6601(h), (See Attachment M, AB 888, dated 04-17-95, at pages 3 and 5).**

**142.** On April 25, 1995, **Section 6602**, was amended to include the following pertinent language:

**143.**   ...In the case of a person taken back into custody pursuant to subdivision (h) of Section 6601, the hearing to determine probable cause shall take place within *72 hours* of the time that the person is taken back into custody...(**See Attachment N, AB 888, dated 04-25-95, at page 5.**) (Emphasis by Petitioner.)

**144.** In addition, **Section 6603(e)**, was added to set a time limit of *45 days for trial,* for a person taken back into custody pursuant to **subdivision (h) of Section 6601,**.

1    **(Attachment N, AB 888, dated 04-25-95, at page 5.** id.)

2    **145.** On May 31, 1995, **AB 888** was amended and **Sections 6601(h)** and **6603(e)**, were

3    removed. The language of **Section 6602** specifying a probable cause hearing within 72

4    hours referring to **section 6601(h)**, remained. **(Attachment O, AB 888, dated 05-31-95,**

5    **at pages 4 and 5.)**

6    **146.** On July 17, 1995, **AB 888, Section 6601(a)** was amended in the assembly to include

7    the requirement of being *in custody* and who is either *serving a determinate sentence* or

8    *whose parole has been revoked* and the language in **Section 6602** about the 72 hour

9    hold, was removed. **(See Attachment P, AB 888, dated 07-17-95.)**

10   **147.** Sometime after this, the Board of Prison Terms sent **15 CCR § 2600.1** to the

11   Government Print Office to be included in the 1996, Division 2, Edition of Title 15.

12   Petitioner has been unable to determine the exact date this was done.

13   **148.** As shown, the Board of Prison Terms, long after the Act was signed into law, which

14   no longer included the above language, submitted **15 CCR § 2600.1** to the Office of

15   Administrative Law (OAL) on 12-29-95, as an emergency regulation, operative on 01-01-

16   96. (See **Attachment K,** id..) A Certificate of Compliance was to be submitted by 04-30-

17   96.

18   **149.** The regulatory history shows that though a Certificate of Compliance was transmitted

19   to OAL on 04-24-96, it wasn't accepted for filing until 06-06-96. (See **Register 96, No.**

20   **23; 6-7-96, OAL File No. 96-0424-03, included as Attachment Q.)**

21   **150.** Petitioner, through his limited resources for research, was unable to determine if or

22   when, public hearings were held for this regulatory act, or the reasons for the delay in

23   acceptance for filing, and believes this regulation was being applied and enforced for a

24   six month period without official authority and should have been automatically repealed

25   on 05-01-96, under the express terms for emergency filings, (the 120 day limit for

26   emergency regulations) as directed by the language of **California Government Code §**

27   **11340 et seq.,** also known as the Administrative Procedures Act (APA).

28   **151.** As presented above, Petitioner believes the enforcing of this regulation at this time

also violated **California Government Code § 11340.5**, which provides:

**152.** No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule *has been adopted as a regulation and filed with the Secretary of State* pursuant to this chapter. **(GC § 11340.5(a).)**

**153.** The main purpose of the Administrative Procedures Act is to ensure that those persons or entities whom the regulation will affect have a voice in its creation, as well as notice of the law's requirements so that they can conform their conduct accordingly. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557; 59 Cal.Rptr.2d 186, cert. Denied 117 S.Ct. 1862, 520 U.S. 1248.) Further, **California Government Code § 11342.600**, (as amended) describes a regulation as:

**154.** "Regulation" means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

**155.** To date, even though **CCR § 2600.1** has since been amended, the opening language as previously pointed out in paragraph 137 and 138 remains, and is still being enforced.

**156.** The preemptive placement of this illegal 72 hour hold without benefit of timely notice or any other Due Process Protections, effectively prevented Petitioner from being released from custody on his release date of May 21, 1996, and instead, Petitioner found himself restrained of his liberty, facing a probable cause hearing in front of the California Board of Prison Terms.

## C. The BPT's Finding Of Probable Cause Exceeded Their Authority:

**157.** As previously shown in the **Statement of Facts, at paragraph 125 and 126**, Petitioner was scheduled to parole on May 21, 1996, and reported to Receiving and Release (R&R) by way of Institutional Pass for that purpose. Instead, Petitioner was physically removed from R&R to a Parole Board Hearing Room. Petitioner was then placed in waist chains, handcuffs, ankle chains, and locked in a holding cell. Shortly

there-after, Petitioner appeared before the Board of Prison Terms for a probable cause hearing pursuant to the Sexually Violent Predators Act.

**158.** Petitioner, through Mr. J. Glatzhofer, the attorney appointed at that time, for the hearing, presented the following arguments to the Parole Board as stated in **paragraph 126** of the **Statement of Facts,** to wit:

1. That Petitioner was coerced into speaking to the evaluators under threat of a CDC 115 Conduct Report being sent to the Board Of Prison Terms;

2. That the Ohio prior didn't qualify under the Act, because the Act didn't include out-of-state convictions;

3. That the Ohio prior also didn't qualify under the Act, because they resulted in indeterminate sentences, and the Act specifically required a determinate sentence.

**159.** The Board of Prison Terms Commissioner, Ramon Estrada, after two (2) telephonic conferences with a Supervising Commissioner, J. Monday (or Mandaly), on Petitioners Ohio claims, stated *that it was to be the **policy** of the Board of Prison Terms to include indeterminate terms and out-of-state crimes.* Commissioner Ramon Estrada further stated that the law required the probable cause hearing and because only some evidence was needed, concluded with a finding of probable cause. Petitioner was then informed that this decision was final and unappealable as this hearing was the final level of review and any further issues would need to be presented to the Court. *The Commissioner also placed the burden of allowing cross-examination of the witness Doctors on the court.* (See **Exhibit 13, Board of Prison Terms Summary,** page 2, supra.; *See page 6 for clarity only.*)

**160.** This determination, once again, showed deliberate indifference towards the facts of Petitioners case, as presented and argued by Petitioner and his attorney, and further passed on the responsibility of determining Petitioners factual issues to another forum.

**161.** Petitioner was further denied the right to meaningful representation of counsel by the Board of Prison Terms, because the attorney, Mr. J. Glatzhofer, having been appointed at the time of the hearing, did not have an opportunity to research and/or gather information or documentary evidence that would negate the facts being relied on.

1   Petitioner does not, in these circumstances, claim ineffective assistance of counsel against

2   the attorney, because the attorney was unable to prepare on such short notice, but does

3   claim that the Board of Prison Terms themselves, denied effective assistance of counsel

4   to Petitioner by the manner in which the attorney was appointed without the benefit of

5   an opportunity for research. As previously stated at **paragraph 37 and 123** of the

6   **Statement of Facts, Exhibit 5 id., at page 2, lines 14-19**, with the placement of the 72

7   hour hold, the Board of Prison Terms knew well in advance that a hearing was to be

8   conducted, yet failed to provide any meaningful due process protections, such as advance

9   notice or appointment of counsel to prepare for the probable cause hearing.

10   **162.**   The courts have determined that having the mere presence of counsel to simply sit

11   by defendant and 'play' court is not enough to give complete satisfaction of

12   constitutional demands, therefore it has been ruled that assistance of counsel be nothing

13   short of the effective assistance of counsel. (***Strickland v. Washington*** (1984) 466 U.S.

14   668, at page 686.) Specifically, it entitles defendants to "the reasonably competent

15   assistance of an attorney acting as his diligent conscientious advocate." (***United States***

16   ***v. DeCoster*** (D.C. Cir. 1973) 487 F.2d 1197; in accord, ***People v. Pope*** (1979) 23 Cal.3d

17   412, at 423.)

18   **163.**   The intentional use of Petitioners out-of-state conviction with it's attendant

19   indeterminate sentence was done with reckless disregard to the requirements of the

20   enabling statute, the approved departmental (CDC and BPT) screening forms and **15**

21   **CCR § 2600.1** (which was used *selectively,* for the 45 day hold), effectively denying

22   petitioner due process protections by applying an administratively altered and enlarged

23   statute, as addressed in ***County of San Diego v. State of California*** (1997) 15 Cal.4th

24   68, at page 100, where the Court stated:

25   **164.**   "When a statute confers upon a state agency the authority to adopt
regulations to implement, interpret, make specific or otherwise carry out

26   its provisions, the agency's regulations must be consistent, not in conflict
with the statute, and reasonably necessary to effectuate its purpose." (See

27   ***In Re Reina*** (1985) 171 Cal.App3d 638, 643-644.)

28   **165.**   The court further held in numerous cases such as ***Dyna-Med, Inc. v. Fair***

33

***Employment & Housing Com.*** (1987) 43 Cal.3d 1379, 1389, that:

**166.**   "Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' [Citation.]"

**167.**  With the finding of probable cause, the Commissioner placed a hold on Petitioner pursuant to **15 CCR § 2600.1,** for 45 days, effective 05-22-96 at 12:01 A.M., to expire 12:00 Midnight on 07-05-96. **(Exh. 13, id., pages 4, and 5.)**

**168.**  Petitioner having previously presented issues about the enforcement of the 1996 version of **15 CCR § 2600.1** (See **Attachment K** supra.), pertaining to the 72 hour hold, now points out, that even if the regulation or policy was proper, the Board of Prison Terms intentionally disregarded the language of their own regulation, in order to place the 45 day hold, which at the time of this probable cause hearing provided in pertinent part:

**169.**   ...Probable cause to place a 45 day hold exist when the inmate or parolee in revoked status is found *to meet all* the following criteria:

**170.**   (1)   Some evidence the person committed a sexually violent offense by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person which resulted in a conviction and sentence for one or more felony violations of the ***following sections*** of the ***Penal Code***: Section 261(a)(2), section 262(a)(1), section 264.1, section 288(a) or (b), section 289(a), or sodomy or oral copulation in violation of sections 286 or 288a. ***The preceding felony violations*** must ***be against two or more victims.*** (Emphasis added by Petitioner.)

**171.**  When interpreting Legislative construction, as in, ***In Re Christian S.*** (1994) 7 Cal.4th 768 at 788, the court specifically held:

**172.**   Where the Legislature makes express statutory distinctions, we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended. This concept merely restates another statutory construction canon: we presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language. As our Supreme Court stated, "we are aware of no authority that supports the notion of legislation by accident."

**173.**  This regulation, by its own language, states the criteria that must be met, and by this language, doesn't include Petitioner within its boundaries. Notably, it also fails to mention any requirement of a determinate term, though a subsequent amendment as an

34

emergency regulation filed on January 14, 1997 (See **15 CCR § 2600.1, Register 97, No. 4; 1-24-97, OAL File No. 97-0115-01, included as Attachment R**), expanding the definition of a Sexually Violent Predator, specifically uses language including indeterminate terms, or a conviction in another state, among other criteria. This amendment was the result of an expansion to the Sexually Violent Predators Act on September 13, 1996 (long after Petitioner had presented his claims on record in two (2) different forums; first, at the Board of Prison Terms, and secondly, at arraignment in Superior Court), which expanded the criteria and definition of those who would qualify as Sexually Violent Predators.

**174.** It must be mentioned that the only other authority for placing a 45 day hold was the result of amendments to the Sexually Violent Predators Act on January 25, 1996, (after **15 CCR § 2600.1** already existed), which added **Welfare & Institutions Code §§ 6601.3 and 6601.5,** as urgency legislation. (See **Attachment 'S', Stats. 1996, ch. 4, AB 1496, §§ 2, and 3.) Sections 6601.3** and **6601.5** only apply under limited circumstances.

**175. Section 6601.3** provides that:

**176.**    The Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody **for no more than 45 days for *full evaluation*** pursuant to subdivisions (c) to (h), inclusive, of Section 6601, unless his or her scheduled date of release falls more than 45 days after referral. (Emphasis added by Petitioner.)

**177. Section 6601.5** states the criteria for requesting an urgency review and specifies time limits for a judge to review the petition and hold a probable cause hearing, by providing:

**178.**    In cases where an inmate's parole or temporary parole hold pursuant to Section 6601.3 will expire before a probable cause hearing is conducted pursuant to Section 6602, the agency bringing the petition may request an urgency review pursuant to this section. Upon that request, a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility until a hearing can be held pursuant to Section 6602. The probable cause hearing provided for in Section 6602 shall be held within 10 calendar days of the date of the order issued by the judge pursuant to this section.

35

**179.** The key wording for applying the 45 day hold authorized by **Section 6601.3** was the need for a **full evaluation**, and as Petitioner's Statement of Facts and exhibits show, the evaluations were conducted and completed on May 06, 1996, therefore negating the need for emergency judicial review or a probable cause within the ten (10) days that this section provides, and as shown by it's absence of implementation, it also wasn't applied by the respective agency. (See **paragraphs 38 thru 40 and 44, Exh. 11**, and **Attachments E** and **F, id.**)

### D. Failure To Release Petitioner Violated The 4ᵗʰ And 8ᵗʰ Amendments:

**180.** Petitioner claims that because of the intentional disregard for applicable law, the Board of Prison Terms exceeded it's authority and imposed an illegal restraint on Petitioner's liberty, in violation of the 4ᵗʰ Amendment of the United States Constitution.

**181.** By statute, a prisoner who has completed a determinate sentence has gained a right to conditional liberty protected by the Fourteenth Amendment.

**182. Cal. Penal Code § 3000(b)(1)**, states in pertinent part:

**183.**   "At the expiration of ... a term of imprisonment imposed pursuant to Section 1170 or at the expiration of a term reduced pursuant to Section 2931, if applicable, the inmate shall be released on parole for a period not exceeding three years."

**184.** Similarly, by statute, a parolee who has completed a term of confinement imposed for a violation of parole under the determinate sentence law is entitled to another release on parole as provided by **Cal. Penal Code § 3057(b)**, which states:

**185.**   "Upon completion of confinement pursuant to parole revocation without a new commitment to prison, the inmate shall be released on parole for a period which shall not extend beyond that portion of the maximum statutory period of parole specified by Section 3000 which was unexpired at the time of each revocation."

**186.** After the finding of probable cause at the BPT hearing, Petitioner was returned to the prison housing unit, where on May 22 1996, a "Health History Summary" was done on Petitioner in preparation for transfer to DMH, **(Exh. 14, "Health History Summary".)** and on May 23, 1996, was ***paroled*** to *Atascadero State Hospital,* supposedly under the

36

1　authority of **CCR § 2600.1**, as previously presented and outlined at **paragraphs 126,**

2　**128, and 129**, see **Exhibit 9**, at **lines 20-22** and **Exhibit 13, page 5**.

3　**187.** Petitioner could find no reference in **CCR § 2600.1**, or **W&I Code §§ 6601.3** and

4　**6601.5**, which authorizes the transfer to a state mental hospital, prior to an arraignment

5　or other applicable court action, though **W&I Code § 6602(a)**, provides:

6　**188.**　"A **judge of the superior court** shall review the petition and shall
　　　　determine whether there is probable cause to believe...." "If the judge

7　　　determines that there is probable cause, **the judge shall order that the
　　　　person remain in custody in a secure facility until a trial is completed**

8　　　...." (Emphasis added)

9　**189.** Petitioner presents, by the language used, that this section appears to apply only after

10　a petition for commitment has been formally filed, either within the normal time

11　restraints, or under the urgency provisions of **W&I Code §§ 6601.3** and **6601.5,** and

12　therefore doesn't cover the illegal restraint imposed by the transfer to the state hospital.

13　**190.** The Courts have determined, and CDC and BPT both recognize that parole is the

14　actual release of a person to the community. The California Supreme Court in ***People***

15　***v. Burgener*** (1986) 41 Cal.3d 505 at 529, fn. 12 stated:

16　**191.**　"The Board of Prison Terms has no discretion to grant or withhold parole
　　　　to a prisoner who has served a determinate term." (Also see, ***McCarthy***

17　　　***v. Superior Court*** (1987) 191 Cal.App.3d 1023, 1028; and ***66***
　　　　***Ops.Atty.Gen. 239**, 243 (1983).

18

19　**192.** Without a valid parole hold or applicable court order, petitioner is entitled to release

20　upon his parole date, and is also entitled to be recognized as a parolee. In ***Terhune v.***

21　***Superior Court (Whitley)*** (1998) 65 Cal.App.4th 864, 875, the appellate court stated:

22　**193.**　"Upon expiration of his determinate prison term, he has no status other
　　　　than parolee." (See also **Penal Code § 2000, subd. (b)(1), 15 CCR §**

23　　　**3075.2(a)** and ***McCarthy***, supra, 191 Cal.App.3d at page 1028).

24　**194.** The Board's regulations define a parolee as a "felon released from confinement in

25　state prison to *supervision in the community*," and state that "release on parole is the

26　actual transfer of a prisoner confined in prison to parole supervision in the community."

27　**(15 CCR § 2000(a)(75)** and **15 CCR § 2355.)**

28　**195.** The 7th Circuit ruling on a Wisconsin case, recognized that mandatory parole creates

a liberty interest, where in ***Felce v. Fielder*** (7th Cir. 1992) 974 F.2d. 1484, it stated:

**196.** "[A] state may create a liberty interest in parole using mandatory language, (e.g. "shall") to create a presumption that parole will be granted when objective criteria are met. Wisconsin's mandatory release statute clearly creates such an interest. [The statute] leaves no room for uncertainty: all state inmates are entitled to mandatory release on parole...." (Id. at 1491.)

**197.** Likewise, California's law similarly provides for mandatory release on parole. Under the determinate sentencing law, the parole period is separated from the prison sentence. A prison sentence is completed before a prisoner paroles. (***People v. Holdsworth*** (1988) 199 Cal.App.3d 253, 261.) At that point, parole becomes mandatory. (**Penal Code §§ 3000(b)(1), 3057(b).**)

**198.** The parole, in this manner to Atascadero State Hospital (a maximum security facility), in Petitioner's eyes amounted to additional punishment, because the detention without a lawful determination was inseparable from Petitioner's prison custody, in violation of the 8th **Amendments** punishment clause, as Petitioner will present in the next argument. In ***Zachary v. Superior Court*** (1997) 67 Cal.Rptr.2d 532, the Court of Appeal, cited the United States Supreme Court decision in ***Miller v. Vitek***, supra, 445 U.S. 480, at pages 491-492, where it determined:

**199.** We have recognized that for the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty,' [citation] and in consequence 'requires due process protection.' [Citations.] The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that 'whether we label this phenomena a "stigma" or choose to call it something else...we recognize that it can occur and that it can have a very significant impact on the individual.' (**Vitek**, supra, **491-492.**)

### Petitioners First Amendment Claim, as presented above:

**200.** The process by the Board of Prison Terms which disregarded their own regulations and its knowing failure to follow the enabling statute, denied Petitioner the right to present meaningful evidence in mitigation to that relied on by the commissioner and as shown, the claim of being the last level of review, clearly denied petitioner *his right to petition the government* (appeal to the administrative body) *for redress* (remedy or

correction) *of grievances* (a reliance on incorrect information).

**Petitioners Fourth Amendment Claim, as presented above:**

**201.** Petitioner's right to be secure ... *against unreasonable ... seizures,* (the manner in which Petitioner was seized at R&R, held beyond his release date and transferred) shall not be violated, and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons ... to be seized.* (Failure to have a lawful court order for the detention.)

**Petitioners Fifth Amendment Claim, as presented above:**

**202.** The entire course of events as presented in the argument above clearly denied Petitioner his *right to not be deprived of...liberty,...without due process of law.*

**Petitioners Sixth Amendment Claim, as presented above:**

**203.** Further, Petitioner was also clearly denied his *right to be informed* (notice) *of the nature* (probable cause hearing for SVP) *and cause* (use of non-qualifying priors and evaluations) *of the accusation,* (that Petitioner may be an SVP) *to be confronted with the witnesses against him,* (the state evaluators) *to have compulsory process for obtaining witnesses in his favor*, (the same state evaluators, and even documents could be witnesses in this manner) *and to have the Assistance of Counsel for his defense.* (More than just having an attorney appointed at the time of the hearing.)

**Petitioners Eighth Amendment Claim, as presented above:**

**204.** Petitioner suffered from having ... *cruel and unusual punishments inflicted*, (by the manner in which the hold and transfer was done, amounting to a continuing extension of Petitioner's parole violation prison term, and the mental anxiety of not knowing how this could be happening).

**Petitioners Fourteenth Amendment Claim, as presented above:**

**205.** The United States Constitution guarantees these rights to Petitioner by way of the **Fourteenth Amendment** and inclusive to the argument presented, Petitioner asks for relief, by way of this Writ, on the basis that he was intentionally and blatantly denied due process protections, and therefor, the filed Petition for commitment, should be

39

1  dismissed, and Petitioner released from custody.

## III.

**PETITIONER WAS ILLEGALLY SEIZED AND IMPRISONED BY THE CALIFORNIA DEPARTMENT OF MENTAL HEALTH WITHOUT A LAWFUL COURT ORDER OR DUE PROCESS IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 8TH, AND 14TH, AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

**Facts Germane To Ground Three**

**206.** 05-22-96   A "Health History Summary" was done on Petitioner in preparation for transfer to DMH. **(Exh. 14, "Health History Summary".)**

**207.** 05-23-96   Petitioner was returned to Parole, Region III, transferred and retained at Atascadero State Hospital, per **15 CCR § 2600.1** for SVP proceedings. **(Exh. 9, id., lines 20-22.)**

**208.** 05-24-96   A Board of Prison Terms **"Holds and Notifications"** Legal Status Sheet was completed, by Lydia Romero, Sacramento, California. It specified Petitioners release date of 05-21-96, county of commitment and last criminal offense. It includes Petitioners first (1st) AT Number from Atascadero State Hospital as 045422-3. **(Exh. 15, "Holds and Notifications" Legal Status Sheet.)**

**209.** 05-29-96   While Petitioner was housed at Atascadero State Hospital, and on parole, a referral for civil commitment proceedings was sent to Kent Cahill, Deputy District Attorney, from Stephen W. Mayberg, Ph.D., Director of the Department of Mental Health. **(Exh. 16, "Referral" Received, June 04, 1996.)**

**210.** 01-13-98   During a regularly scheduled (once a week) **_random_** search, of Petitioners four (4) man dorm, a marijuana cigarette was discovered in an openly accessible area of Petitioners night-stand.

**211.** 01-20-98   After a referral for charges was declined by the San Luis Obispo County District Attorney, a parole violator arrest warrant was issued, by request of Atascadero State Hospital. **(Exh. 27, "Warrant", per Penal Code § 3056.)**

**212.** 01-21-98   Discharged from Atascadero State Hospital (ASH), and transferred to California Men's Colony, with a ASH hold, deferring to parole revocation proceedings for possession of a marijuana cigarette. **(Exh. 28, "Social Services Discharge Summary", and Exh. 29 "HOLD RECEIPT", dated 01-21-98.)**

**213.** 01-21-98   Petitioner, immediately upon arrival at California Men's Colony-East, (CMC-E), was placed on twenty-four (24) hour suicide watch as standard operating procedures for returnees from Atascadero State Hospital. **(No exhibit available.)**

**214.** 01-22-98   Petitioner, after being reviewed by the prison psychiatrist, was cleared from suicide watch, and then transferred to the Administrative Segregation Unit, (Ad. Seg.) pursuant to a CDC 114-D, placement order for past behaviors at ASH as cited in the **"Social Services Discharge Summary", Exh. 28, id.**

41

A. The placement determination was made without issuance of a CDC-115, (CDC Disciplinary Report), notice, a hearing, or any other due process protections.

## A. Acceptance By Hospital Violated The Fourth Amendment:

**215.** This argument will present the events associated with the legality of Petitioners confinement at Atascadero State Hospital.

**216.** On May 23, 1996, Petitioner was transported by CDC Officers in ankle chains, waist chains and handcuffs to Atascadero State Hospital (as of July, 1996, *a statutorily mandated* place of confinement, see **W&I 6600.05, added by Stats.1996, c. 197 (A.B. 3483), § 20, eff. July 22, 1996**), *to await court proceedings*. At no time during this transfer did Petitioner feel like a parolee or even a *civilly* detained mental patient. Instead, Petitioner felt more like a prisoner facing additional charges for which punishment was already being exacted, this time, without, the benefit of an appearance in court. Petitioner was given the hospital patient number ASH # 045422-3.

**217.** Petitioner was given an intake interview, *not a evaluation*, where his GAF (Global Assessment Scale of Functioning) score was reduced from a prison psychiatrists determination of 75, to the intake interviewers (*a psychiatric technician, not a doctor*) determination of 50 (amounting to false documentation), of which, when petitioner questioned the cause of the reduction, was sarcastically told that Petitioner had bumped his head on the ride over, which caused mental degeneration, and because no one could be in the hospital with a GAF score higher than a 55. This, Petitioner discovered, would set the tone of *the treatment*, Petitioner would receive while in this hospital.

**218.** Petitioner was then taken to a locked reception unit, where Petitioner was given a booklet titled Patient Rights Handbook, which specifies those rights guaranteed by the Welfare & Institutions Code's, Article 7: Legal and Civil Rights of Persons Involuntarily Detained; which states:

**219.** § 5325. List of rights; posting; waiver

Each person involuntarily detained for evaluation or treatment under provisions of this part, each person admitted as a voluntary patient for psychiatric evaluation or treatment to any health facility, as defined in

42

Section 1250 of the Health and Safety Code, in which psychiatric evaluation or treatment is offered, and each mentally retarded person committed to a state hospital pursuant to Article 5 (commencing with Section 6500) of Chapter 2 of Part 2 of Division 6 shall have the following rights, a list of which shall be prominently posted in the predominant languages of the community and explained in a language or modality accessible to the patient in all facilities providing such services and otherwise brought to his or her attention by such additional means as the Director of Mental Health may designate by regulation:

(a)   To wear his or her own clothes; to keep and use his or her own personal possessions including his or her toilet articles; and to keep and be allowed to spend a reasonable sum of his or her own money for canteen expenses and small purchases.

(b)   To have access to individual storage space for his or her private use.

(c)   To see visitors each day.

(d)   To have reasonable access to telephones, both to make and receive confidential calls or to have such calls made for them.

(e)   To have ready access to letter writing materials, including stamps, and to mail and receive unopened correspondence.

(f)   To refuse convulsive treatment including, but not limited to, any electroconvulsive treatment, any treatment of the mental condition which depends on the induction of a convulsion by any means, and insulin coma treatment.

(g)   To refuse psychosurgery. Psychosurgery is defined as those operations currently referred to as lobotomy, psychiatric surgery, and behavioral surgery and all other forms of brain surgery if the surgery is performed for the purpose of any of the following:

(h)   To see and receive the services of a patient advocate who has no direct or indirect clinical or administrative responsibility for the person receiving mental health services.

(i)   Other rights, as specified by regulation.

Each patient shall also be given notification in a language or modality accessible to the patient of other constitutional and statutory rights which are found by the State Department of Mental Health to be frequently misunderstood, ignored, or denied.

Upon admission to a facility each patient shall immediately be given a copy of a State Department of Mental Health prepared patients' rights handbook.

The State Department of Mental Health shall prepare and provide the forms specified in this section and in Section 5157.

The rights specified in this section may not be waived by the person's

43

1    parent, guardian, or conservator.

2    **220.** The Welfare & Institutions Code also provides that these rights are, by the language

3    used, mandatory, as shown in **§ 5327**:

4    **221.**    **5327.** Rights of involuntarily detained persons:

5    Every person involuntarily detained under provisions of this part or under

6    certification for intensive treatment or postcertification treatment in any
     public or private mental institution or hospital, including a conservatee

7    placed in any medical, psychiatric or nursing facility, shall be entitled to
     all rights set forth in this part and shall retain all rights not specifically

8    denied him under this part. (Added by Stats.1967, c. 1667, p. 4074, § 36,
     operative July 1, 1969.)

9    **222.** Petitioner was also given a sheet of paper limiting and disclaiming the availability

10   of most of those rights as previously stated in the Patients Rights Handbook, because

11   Petitioner would be confined at Atascadero State Hospital. DMH, on June 4, 2003, filed

12   new regulations (**Register 2003, No. 23**, Operative July 4, 2003) changing **CCR Title**

13   **9**, by adding **Article 2, Sections 883** and **884** entitled "Non-LPS Patients Rights, which

14   had the effect of making most of the previously guaranteed rights, rights that can now

15   be denied for good cause, and immediately began applying these permissive rights to the

16   SVP population. (Conditions of confinement are still being decided under class action

17   litigation in *Hydrick vs Hunter* (C.A.9 (Cal.) 2006) 449 F.3d 978)

18

19   **B. Detention At Atascadero Amounted To Additional Punishment:**

20   **223.** In keeping true to this disclaimer, from that point on, throughout transfers to different

21   units, Petitioners movement would be restricted to the unit, unless under direct staff

22   escort or supervision. Petitioner was not allowed to earn a privilege card, which would

23   have enabled him to leave the unit without supervision, and when Petitioner questioned

24   the need for this different treatment from the MDO's, (Mentally Disordered Offenders,

25   many of whom have current and past sex crime convictions), and other commitments on

26   the unit, was told, "It's because you're here as an SVP, (disparate treatment based on

27   a status label) and we can't allow you to be unsupervised to roam the hospital. When

28   Petitioner complained to Patients Rights Advocacy, Petitioner was told, 'that it wasn't

1   a Patient Rights issue', that, 'it was a treatment issue'.

2   **224.** Earning a privilege card carried with it, the requirement of signing off the housing

3   unit to a destination, limited to one destination per sign-out. To go to a second

4   destination, the person would be required to return to the housing unit and sign out

5   again. Further, any staff member, at anytime, for any perceived reason, could curtail this

6   privilege by reducing a persons privilege level *without a hearing of any kind.*

7   **225.** The level system operates on three levels for SVP detainees, versus the five levels

8   for other commitments (This portion is limited to Atascadero State Hospital's (ASH)

9   privileging system, Coalinga State Hospital (CSH) has four levels). Level one completely

10   restricts a person to the housing unit, with direct staff supervision: Level two allows

11   escorts and drop-offs to staff supervised destinations only (CSH's level two privilege

12   allows signing out to one destination, with limits on available destinations), with staff

13   pick-ups for return to the housing units: Level three allows the previously mentioned sign

14   out to a single destination, (CSH allows three destinations). (See **CSH's Patient Access**

15   **System (PAS) Manual included as Attach. 'U'**, the one for ASH was lost or

16   confiscated during Petitioner's property transfer from ASH to CSH.)

17   **226.** Petitioner was forced into a regimen where he dressed in khakis, (a prison like

18   uniform) was visually supervised during shaves, showers and other personal activities.

19   Petitioner was forced to march to the dining room, and/or to any other activity, in lines

20   of two, and conversation in the line was strictly forbidden. Petitioners property was

21   subjected to excessive searches on a weekly basis, with no care given to the manner in

22   which his property or legal papers were handled, thus paperwork was always scattered,

23   needing time consuming rearrangement.

24   **227.** In contrast, Petitioner, while in prison, was allowed unfettered access to the yard, the

25   gym, and other locations, (excepting the periods of lock-down) even without the privilege

26   cards used in prison. The difference was no night yard or night activities unless the

27   prisoner belonged to a red card privilege group. Petitioner also was allowed to have in

28   his possession, assorted personal hygiene items, such as, toothpaste, regular toothbrushes,

deodorant, soap, hair grease, hair brushes, tweezers, Tylenol, vitamins, and other assorted medications not needing a prescription, personal clothing items like blue jeans, color limited lace-up sneakers, sweat socks, sweat suits, pajamas, bath robes, jock straps, personal equipment items such as, a television, radio, typewriter, eating utensils, hair clippers, electric razors, safety razors, hot pots, hot water stingers, headphones with cords of 6 to 8 feet in length, table lamps, fans, scissors, sewing kits, regular pens and pencils, rulers, art supplies, leather working materials, musical instruments, food items and can goods bought from the canteen store or sent from home in quarterly packages. Searches were conducted on suspicion of wrongdoing, or on a basis of once every three (3) to six (6) months, and care and respect of property was observed 90 percent of the time.

**228.**  Petitioner, while confined at Atascadero, was no longer allowed to possess any of the property he had while in prison; pencils, pens, (except for one four and a half inch pen the hospital supplied, limited to a one for one trade) razors, and was only allowed minimal personal hygiene items, such as, toothpaste, deodorant, soap, hair grease, all limited to one each. Personal electronics was limited to one radio/cassette player, battery operated only. My legal papers and effects was limited to whatever would fit in a three (3) inch stack. (It must be noted that this limitation was changed to a 15 inch stack, and changed again, after access to the court challenges.) During the time of the limitations, a person could swap his legal material on a one-for-one basis, with materials stored in the hospital property room.

**229.**  It must be noted that the Department of Mental Health also made physical changes to the Hospital, which included additional locked gates in some hallways, the removal of wooden dining room tables and matching cushioned chairs, in favor of prison like metal tables and attached metal stools (no backs or cushions) that were bolted to the floor, the beds with springs and 5 inch mattresses were replaced by sheet metal (cookie sheets) beds with two and a half inch compressed mattresses, exactly like those in prison or county jails. Later additions, included the building of 6 new housing units to supply 250 more beds in a remote area of the hospital to house just the SVP population.

230. The restrictive conditions Petitioner found himself suffering under were worse than those Petitioner had faced while in prison for the purpose of punishment, and these conditions had a significant impact on Petitioners frame of mind. The restrictive nature of the facility, as far back as 1975, was recognized by the California Supreme Court in *People v. Burnick* (1975) 14 Cal.3d 306, when it stated:

231.    "Nor is there any doubt that such commitment to a 'state' hospital results in a real deprivation of liberty. Like all persons found to be treatable mentally disordered sex offenders in California, Burnick was committed by the court to Atascadero State hospital. Let us not deceive ourselves as to the nature of that institution... [T]his is much more like a prison than a hospital... There are bare corridors, bars, iron gates, rows of cells - all the stigma of punishment are in evidence everywhere... [S]ecurity precautions are in evidence everywhere... Internally, despite its dehumanizing attributes, it is well-maintained and well equipped and might be characterized as a sanitary dungeon... and lest it be thought that only outsiders characterize this institution as essentially indistinguishable from a prison, consider the testimony of Dr. Harold M. Rogallo, senior psychiatrist on the Atascadero staff. Dr. Rogallo identified Atascadero as the only 'maximum security' hospital in the Department of Mental Hygiene; noting the fact that 'it is all locked and it is under strict supervision, and we have approximately fifty security officers for a population of about thirteen hundred and fifty patients... Our hospital is pretty much bordering, you might say, on a correction facility'. (id at page 319-320)

232. During the period of time that Petitioner was housed at Atascadero State Hospital, more police were hired specifically to address the SVP population. Red Light alarms were responded to by Hospital Peace Officers, instead of trained psychiatric technicians. Any objections or statements by the SVP patient as to his side of what may have happened for the Red Light alarm, was met with aggression and immediate physical restraint, where they would first, use handcuffs for escort purposes, and after that, isolation, or more commonly, of being strapped to a bed through the use of leather restraints (5 point restraint). Though most physical assaults and other crimes were committed by the other commitment populations, SVP's, in these situations, were eight (8) times more likely to face Three Strikes criminal charges brought by the Hospital, through it's Peace Officers. The involvement of the Peace Officers in any patient redirection or restraint, almost always involved a **physical** confrontation by the Peace Officers, and due to this contact, enabled the Peace Officers to claim assault, or a battery

47

1     of sorts. Further, the latest Penal Code Section that was being abused by them was **Penal**

2     **Code § 69**, Obstructing or resisting executive officers in performance of their duties.

3   **233.** Any failure of the local District Attorney to go forward with any alleged charges, was

4     then responded to by the Hospital, with requests for parole violation proceedings, if the

5     SVP patient was still on parole, in order to return the SVP to prison.

6   **234.** In **_Jones v. Blanas_** (9th Cir. 2004) 393 F.3d 918, Jones appealed the summary

7     judgment against him on a **42 U.S.C.A. § 1983** action and the court in addressing his

8     need for equitable tolling to develop his claims pursuant to discovery, gave an overview

9     of conditions of confinement for civil detainees by stating:

10  **235.**    The civil nature of SVPA confinement provides an important gloss on the
           meaning of "punitive" in this context.  Because he is detained under civil
11         rather than criminal   process, an SVPA detainee is entitled to "more
           considerate   treatment"   than   his   criminally   detained   counterparts.
12         **_Youngberg_**, 457 U.S. at 321 22, 102 S.Ct. 2452.    Therefore when a
           SVPA detainee is confined in conditions identical to, similar to, or more
13         restrictive than, those in which his criminal counterparts are held, we
           presume that the detainee is being subjected to "punishment."     See
14         **_Sharp v. Weston_**, 233 F.3d 1166, 1172 73(9th Cir.2000) (finding that
           Youngberg required that individuals civilly confined at a commitment
15         center receive "more considerate" treatment than inmates at the
           correctional center in which the commitment center was located). **_Jones_**
16         **_v. Blanas_** 9th Cir. 2004 393 F.3d 918.

17

18         **C. Discharge By Hospital Voided The Petition For Commitment:**

19  **236.** Not only was Petitioners original reception at Atascadero without lawful authority,

20     the hospital, in turn, discharged Petitioner in favor of Parole Violator proceedings, as

21     outlined in the statement of facts at **paragraphs 210 - 212**, pertaining to the following

22     incident:

23  **237.** On January 13, 1998, During a regularly scheduled (once a week) **_random_** search,

24     of Petitioners four (4) man dorm, a marijuana cigarette was discovered in an openly

25     accessible area of Petitioners night-stand. **(See Exh. 28, "Social Services Discharge**

26     **Summary".)**

27  **238.** A referral for felony prosecution was made to, and declined by, the San Luis Obispo

28     County District Attorney, at which point, on January 20, 1998 a parole violator arrest

1   warrant was issued, by request of Atascadero State Hospital. **(Exh. 27, "Warrant", per**

2   **Penal Code § 3056.)**

3   **239.** On January 21, 1998, Petitioner was discharged from Atascadero State Hospital

4   (ASH), and transferred to California Men's Colony (CMC), (with a, unknown to

5   Petitioner at that time, ASH hold) deferring commitment proceeding, in favor of parole

6   revocation proceedings for possession of a marijuana cigarette. **(Exh. 28, "Social**

7   **Services Discharge Summary", and Exh. 29 "HOLD RECEIPT", Dated 01-21-98.)**

8   **240.** Petitioner, immediately upon arrival at California Men's Colony-East, (CMC-E), was

9   placed on twenty-four (24) hour suicide watch as standard operating procedures for

10   returnees from Atascadero State Hospital. Petitioner was placed in a cell completely nude

11   that contained nothing but a toilet and cement bed. Petitioner had to sleep on this cement

12   slab, because no linen, blankets, or pillows were provided. **(No exhibit available.)**

13   **241.** On January 22, 1998, Petitioner, after being *psychologically evaluated* by the *prison*

14   *psychiatrist*, was cleared from suicide watch, and then transferred to the Administrative

15   Segregation Unit, (Ad. Seg.) pursuant to a CDC 114-D, placement order attributed to

16   argumentative behavior at ASH, as cited in the **"Social Services Discharge Summary".**

17   **(Exh. 28, id.)** The placement determination was made without issuance of a CDC-115

18   (CDC Disciplinary Report), notice, a hearing, or any other due process protections.

19   **242.** Petitioner had been housed in Ad. Seg., for thirty (30) days, before his initial

20   Institution Classification Committee (ICC) hearing on January 22, 1998, where Petitioner

21   was told that he would remain in Ad. Seg., for an additional thirty (30) days, or until

22   after Petitioners Parole Revocation Hearing, when he would then, be calendared for

23   housing review. **(No exhibit available.)**

24   **243.** On March 06, 1998, Petitioner appeared at the Parole Revocation Hearing. Parole was

25   revoked for eight (8) months, eligible for half-time credits with a revocation release date

26   of 06-29-98. The standard consistently applied for possession of a joint or under the

27   influence is a 30 day dry out, or continuation on parole (COP). This decision by the

28   Parole Board was far in excess of the usual revocation period. **(Exh. 30, "Hearing**

1   **Summary and Decision", 4 Pages.)**

2   **244.** On March 19, 1998, Petitioner again appeared before the ICC, for a thirty (30) day

3   Ad. Seg. Review and Placement Review. Petitioner was retained at CMC-E, (a Level 3

4   institution) as a Level 1 override for *SVP processing*, thereby punishing Petitioner for

5   status. Petitioner was after all, housed at Chuckawalla Valley State Prison (CVSP, is a

6   level 2 facility), when Petitioner was originally evaluated for the SVP Act. Outside of

7   the label, there were no other changes in Petitioner's custody status from the time of the

8   evaluations, until the revocation proceedings. Petitioner had not yet had the determining

9   factor of being adjudicated an SVP. *Petitioner was then, cleared for Reintegrated Mixed*

10   *Yard Placement. (General Population.)* **(Exh. 31, "CDC 128G Chrono", dated 03-19-**

11   **98.)**

12   **245.** The very next day on March 20, 1998, Petitioner was released from Ad. Seg., and

13   transferred to a general population yard, where he waited for Unit Classification Review.

14   **246.** 04-16-98 Petitioner appeared before the Unit Classification Committee (UCC) for

15   Initial Classification. *SVP Status* was again cited, as cause for continued Level 3

16   housing, though Petitioners custody level was lowered, the custody level was still higher

17   than any custody level Petitioner has ever had, outside of his original reception at the

18   Department of Corrections in 1987 on the P.C. § 288(a) conviction . **(Exh. 32 "CDC-**

19   **128G Chrono", dated 04-16-98.)**

20   **247.** Petitioner received on April 29, 1998, a Parole Violator Work-Time Credit sheet

21   showing a Maximum Revocation Release Date of 09-17-98, and with one third credit

22   reduction, a release date of 06-29-98. Petitioner subsequently attended a half-time credit

23   earning assignment, called Project Change (a relapse prevention program), which further

24   adjusted Petitioners release date to 06-14-98. **(Exh. 33, "Parole Violator Legal Status**

25   **Summary".)**

26   **248.** On May 05, 1998 Petitioner signed his Parole papers. **(Exh. 34, "Notice and**

27   **Conditions of Parole".)** Petitioner was never re-evaluated for the SVP Act, or informed

28   of the DMH hold.

**249.** Petitioner was paroled on June 12, 1998, due to the original Parole date of June 14, 1998, falling on a weekend. The Parole date was after all applicable work-time credits were applied. Instead of Parole to the community, Petitioner was **Paroled to a ASH Hold. (See Exh. 35, "Holds and Notification" Legal Status Sheet.)** This is the second (2nd) Legal Status Sheet and is questionable as it presents a new hospital patient number, (to wit: AT # 047930-3 for Petitioner), which implies that Petitioner was given a complete discharge on January 21, 1998, in favor of custody for the parole violation.

**250.** The Holds and Notifications Legal Status Sheet states in bold that the hold is the result of a court order pursuant to **W&I Code § 6601.3**. Petitioner was unable to find evidence of a second court order covering this restraint or for that matter any authorizing statute that allows the placement of a hold by the Hospital, which amounted to a second illegal seizure. Petitioner has also never been able to discover any document that shows a hold ordered by the court pursuant to **W&I Code § 6601.3**.

### Petitioners First Amendment Claim, as presented above:

**251.** Petitioner was denied *his right to petition the government* (appeal from the transfer decision, a liberty interest) *for redress* (remedy or correction) *of grievances* (no lawful authority to detain Petitioner, and the reliance on non-qualifying criteria).

### Petitioners Fourth Amendment Claim, as presented above:

**252.** Petitioner's right to be secure ... *against unreasonable ... seizures*, (the manner in which Petitioner was transported and received by the hospital, prior to issuance of some type of court action (attaches to both seizures)) shall not be violated, and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons ... to be seized.* (Failure to have a lawful court order for the detention.)

### Petitioners Fifth Amendment Claim, as presented above:

**253.** The entire process as presented above clearly denied Petitioner his *right to not be deprived of...liberty,...without due process of law.*

**Petitioners Sixth Amendment Claim, as presented above:**

**254.** Further, Petitioner was also clearly denied his *right to be informed* (notice) *of the nature* (transfer to a state mental institution) *and cause* (to await a court process, for ordering a detention) *of the accusation,* (that Petitioner may be an SVP) *to be confronted with the witnesses against him,* (the state evaluators) *to have compulsory process for obtaining witnesses in his favor,* (the same state evaluators, or documentary evidence) *and to have the Assistance of Counsel for his defense.* (A lawyer to challenge the manner in which custody was imposed, absence of the right to appeal.)

**Petitioners Eighth Amendment Claim, as presented above:**

**255.** Petitioner suffered from having ... *cruel and unusual punishments inflicted,* (by the manner in which the hold, transfer, reception, and punitive conditions of the hospital, amounted to a continuing extension of Petitioner's parole violation prison term).

**Petitioners Fourteenth Amendment Claim, as presented above:**

**256.** The United States Constitution guarantees these rights to Petitioner by way of the **Fourteenth Amendment** and inclusive to the argument presented, Petitioner asks for relief, by way of this Writ, on the basis that he was illegally seized, denied notice of the seizure, intentionally and blatantly denied due process protections, and therefor, the filed Petition for commitment, should be dismissed, and Petitioner released from custody.

1

**IV.**

2
3
4
5

**RICK VAGNOZZI, LOS ANGELES COUNTY DEPUTY DISTRICT ATTORNEY, INTENTIONALLY MISLED THE COURT IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 6068 AND CAUSED THE ILLEGAL RESTRAINT OF PETITIONER IN VIOLATION OF THE 1st, 4th' 8th AND 14th AMENDMENT...**

6

**Facts Germane To Ground Four:**

7
8
9

**257.** 05-24-96    A Board of Prison Terms **"Holds and Notifications"** Legal Status Sheet was completed, by Lydia Romero, Sacramento, California. It specified Petitioners release date of 05-21-96, county of commitment and last criminal offense. It includes Petitioners first (1st) AT Number from Atascadero State Hospital as 045422-3. **(Exh. 15, "Holds and Notifications" Legal Status Sheet.)**

10
11
12
13

**258.** 05-29-96    While Petitioner was housed at Atascadero State Hospital, and on parole, a referral for civil commitment proceedings was sent to Kent Cahill, Deputy District Attorney, from Stephen W. Mayberg, Ph.D., Director of the Department of Mental Health. **(Exh. 16, "Referral" Received, June 04, 1996.)**

14
15
16

**259.** 06-13-96    The State of Ohio, Office of the Attorney General, printed out a **"Criminal History Sheet"** in response to a request by Los Angeles Deputy District Attorney Rick Vagnozzi. This printout was provided on 06-14-96. It undeniably shows Petitioners Ohio convictions and the indeterminate sentences received. **(Exh. 17, "Ohio Criminal History Sheet".)**

17
18
19

**260.** 06-14-96    Deputy District Attorney Rick Vagnozzi, filed and served a "Affidavit and Order for Removal of **PRISONER**", on Atascadero State Hospital, for Petitioners appearance on June 26, 1996, for arraignment proceedings pursuant to **W&I Code § 6602. (Exh. 18, "Affidavit for Attendance".)**

20
21

**261.** 06-18-96    A *Petition and Affidavit* for commitment as a Sexually Violent Predator, by Deputy District Attorney Rick Vagnozzi, was filed in the Superior Court, Los Angeles County, **Case No. ZM 001979. (Exh. 19, "Petition and Affidavit".)**

22
23

**262.** 06-25-96    Petitioner was transferred from Atascadero State Hospital, to Los Angeles County Jail, for a 06-26-96 arraignment date. **(Exh. 20, "County Jail Booking Record".)**

24
25

**263.** 06-27-96    Petitioner was arraigned on this date instead, because of the Sheriff's inability to find and transport Petitioner on 06-26-96. **(Exh. 21, "Minute Order of Arraignment".)**

26
27

**A. The District Attorney's Level Of Review, Per W&I Code § 6601:**

28

**264.** Petitioner argues, like CDC, BPT, and DMH, the County Counsel or District

Attorney, is included by the Sexually Violent Predators Act, as a due process *level of review*, and as such, was given permissive authority (may) to file a petition.

**265.** The pertinent part of **W&I Code § 6601(h)**, provides:

> ... Copies of the evaluation and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who *may* file a petition for commitment

**266.** Petitioner presents that the language, 'copies of the evaluations <u>and</u> *any other supporting documents*,' includes the documents used to determine that the other qualifying criteria, (as previously presented at **paragraphs 49 and 50**, (See **Attach. 'I'**, **W&I Code § 6600**)) has been met, as required by the SVP Act.

**267. W&I Code § 6601(i)**, then provides to the designated counsel, the need for accordance in the recommendation before filing the petition, by stating:

**268.**     If the county's designated counsel *concurs* with the *recommendation*, a petition for commitment shall be filed in the superior court of the county in which the person was convicted of the offense for which he or she is under the jurisdiction of the Department of Corrections. (Emphasis by Petitioner.)

**269.** Concur is defined 'be in accord' or 'be in agreement', meaning, the designated counsel must first, determine that all the qualifying criteria, as required by the SVP Act, have been met, and correctly applied, before a petition may be filed.

### B. The Acts Leading To Filing Of Petition:

**270.** Accordingly, on May 24, 1996, after Petitioners arrival at ASH, and at the time, unknown to Petitioner, a "Holds and Notifications" Legal Status Sheet was completed by Board of Prison Terms member Lydia Romero. The normal use for this document is when a parolee is to be held by a law enforcement agency, pending a parole revocation proceeding. (See **paragraph 257, Exh. 15.**)

**320.**     On May 29, 1996, a referral for the commencement of civil commitment proceedings was sent to Kent Cahill, Deputy District Attorney, from Stephen W. Mayberg, Ph.D., Director of the Department of Mental Health (See **paragraph 258, Exh. 16, "Referral"**), long after Petitioners release date, and continuously without notice or a hearing of any

sort.

### C. The Petition Was Intentionally Fabricated By DDA Rick Vagnozzi:

**321.**    On June 13, 1996, Los Angeles Deputy District Attorney Rick Vagnozzi, requested criminal offense information from the State of Ohio, Office of the Attorney General, and on June 14, 1996, the State of Ohio provided a printout of Petitioner's **"Criminal History Sheet"**, personally addressed to DDA Rick Vagnozzi. It undeniably shows Petitioners Ohio convictions and the indeterminate sentences received. (See **Paragraph 259, Exh. 17, "Ohio Criminal History Sheet".**)

**322.**    The conscious act of contacting Ohio presents the strongest proof that DDA Rick Vagnozzi was well aware of the offenses being out-of-state, and as such, were not included under the express, *limiting*, requirements of the 1996 version of **W&I Code § 6600** et al., which as previously shown, required particularly specified California Penal Code violations. Further, upon receipt of the response, it was also apparent that the Ohio convictions resulted in indeterminate terms, which at that time was also outside of the *limited scope* of the SVP Act.

**323.**    After review of these documents, and with the current information from Ohio, DDA Rick Vagnozzi, on June 14, 1996 filed and served an Affidavit and Order for Removal of ***Prisoner***, (further evidence that Petitioner was still considered a prisoner while being housed at Atascadero, and therefore subject to punishment) on Atascadero State Hospital, for Petitioners appearance in court on June 26, 1996. (See **Paragraph 260, Exh. 18, "Affidavit for Attendance".**) As shown by the exhibit, this action was made even before a petition was actually filed.

**324.**    The petition for commitment, was filed in the Superior Court for the County of Los Angeles on June 18, 1996. (See **Paragraph 261, Exh. 19, "Petition and Affidavit".**) Petitioner was no longer **in custody under the jurisdiction of the Department of Corrections**, at the time the petition was filed (See ***People v. Hubbart*** (2001) 88 Cal.App.4th 1202, and **W&I §6601(a)**), but supposedly on parole under the jurisdiction

1    of the California Board of Prison Terms, and illegally detained under the jurisdiction of

2    the Department of Mental Health.

3    **325.**   On June 25, 1996, Petitioner was transferred from Atascadero State Hospital, in

4    handcuffs, waist-chains and leg irons (a highly punitive mode of restraint for a so-called

5    civil detention issue), to Los Angeles County Jail, for an Arraignment, scheduled for

6    June 26, 1996. **(Paragraph 262, Exh. 20, "County Jail Booking Record".)**

7    **326.**   Due to the Sheriffs inability to locate Petitioner on June 26, 1996, Petitioner was not

8    arraigned until June 27, 1996. (See **Paragraph 263 and/or 337, Exh. 21, "Minute**

9    **Order of Arraignment".)**

10   **327.**   Petitioner presents the Petition and Affidavit, as another step, in showing how DDA

11   Rick Vagnozzi, intended to violate Petitioners **1st, 4th, 8th** and **14th Amendment** rights,

12   by fabricating facts to the court, in order to hold Petitioner for a probable cause hearing.

13   **328.**   The petition on it's face presents Case No. A766947, Petitioner's 1987 California

14   Conviction, and Case No. CR-015641, Petitioner's 1975 Ohio Conviction, as qualifying

15   offenses, even though it's apparent that the Ohio offenses did not qualify on two (2)

16   distinct points, and the intentionally fabricated language of the petition and affidavit state

17   in pertinent part, **"... and received a _determinate_ sentence for the following sexually**

18   **violent offenses..."**. The petition then includes, as a part of that declaration, both,

19   Petitioners Ohio and California convictions. The use of these words show malicious

20   forethought and planning, as it deceives the court as to the sentences actually received

21   by Petitioner in Ohio, and amounts to intentional prosecutorial malfeasance. **(Paragraph**

22   **261, id. Exh. 19, "Petition and Affidavit".)** (Emphasis by Petitioner.)

23   **329.**   The intentional fabrications used in filing the petition were violations of the **Business**

24   **and Professions Code § 6068(d)**, which mandates the Duties Of Attorneys, and states:

25   **330.**   To employ, for the purpose of maintaining the causes confide to him or
     her those means only as are consistent with truth, and _**never to seek to**_
26   _**misled the judge**_ _or any judicial officer by an artifice or false statement_
     _or fact or law._ (Emphasis by Petitioner)
27

28   **331.**   Numerous cases have defined prosecutorial duties and the limitations of what is

1   permissible conduct, as quoted from **People v. Pitts** (5 Dist. 1990) 273 Cal.Rptr. 757,

2   223 Cal.App.3d 606), citing **Berger v. United States** (1935) 295 U.S. 78, 88, 55 S.Ct.

3   629, 633, 79 L.Ed. 1314 where the court stated:

4   **332.**   A prosecutor has a duty to prosecute vigorously. "But, while he may
strike hard blows, he is not at liberty to strike foul ones. It is as much

5   his duty to refrain from improper methods calculated to produce a
wrongful conviction as it is to use every legitimate means to bring about

6   a just one." (**Berger v. United States** (1935) 295 U.S. 78, 88, 55 S.Ct.
629, 633, 79 L.Ed. 1314.)   Misconduct need not be intentional in order

7   to constitute reversible error. (**People v. Bolton** (1979) 23 Cal.3d 208,
214, 152 Cal.Rptr. 141, 589 P.2d 396.)

8

9

10   **Petitioners First Amendment Claim, as presented above:**

11   **333.**   Petitioner was denied his *right to liberty* (the falsified petition of DDA Richard

12   Vagnozzi, directly caused an extended incarceration) *his right to petition the government*

13   (appeal the use of non-qualifying criteria, and due to the stay of proceedings, the absence

14   of a ruling on the demurrer) *for redress* (remedy or correction) *of grievances* (a reliance

15   on fabricated information,).

16   **Petitioners Fourth Amendment Claim, as presented above:**

17   **334.**   The intentional fabrications made by DDA Rick Vagnozzi, and the decision to go

18   forward with the filing of a petition, even after determining that Petitioner had only one

19   (1) qualifying offense and corresponding sentence, according to the express wording of

20   W&I Code § 6600 et al. denied Petitioner the *right to be secure ... against unreasonable*

21   *... seizures* (the fabricated petition directly resulted in Petitioner being seized, incarcerated

22   and held to answer to the petition), *shall not be violated...*

23   **Petitioners Eighth Amendment Claim, as presented above:**

24   **335.**   Petitioner suffered from having ... *cruel and unusual punishments inflicted*, (by the

25   manner in which the illegal confinement was obtained).

26   **Petitioners Fourteenth Amendment Claim, as presented above:**

27   **336.**   The United States Constitution guarantees these rights to Petitioner by way of the

28   Fourteenth Amendment and inclusive to the argument presented, Petitioner asks for relief,

by way of this Writ, on the basis that he was intentionally and blatantly denied due process protections, by intentional prosecutorial fabrication, amounting to gross misconduct, and therefor, the filed Petition for commitment, should be dismissed and Petitioner released from custody.

## V.

**THE SUPERIOR COURT DID NOT HAVE JURISDICTION TO ARRAIGN PETITIONER OR HOLD A PROBABLE CAUSE HEARING AND THIS ACTION VIOLATED THE RIGHTS GUARANTEED BY THE 1st, 4th, 5th, 6th, 8th AND 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION...**

### Facts Germane To Ground Five:

**337.** 06-27-96   Petitioner was arraigned on this date instead, because of the Sheriff's inability to find and transport Petitioner on 06-26-96. **(Exh. 21, "Minute Order of Arraignment".)**

**338. 06-27-96**   Petitioner, at arraignment, pled demurrer, and presented argument for dismissal. Petitioner's argument and motion for dismissal were based on the following facts:

**1.** That the Ohio prior didn't qualify because the Act was specifically limited to particularly enumerated California Penal Code Sections. **(W&I Code § 6600(b).)**

**2.** That the Ohio prior didn't qualify because the Act specified two (2) or more victims for which the person received a determinate sentence, and the sentence in Ohio was indeterminate. **(W&I Code § 6600; Exh. 2, id. At page 2.)**

**3.** That the California prior didn't bring Petitioner under the Act because Petitioner only had one (1) victim for which a determinate term had been given and served, and the Act required a minimum of two. **(Exh.  4, id. at page 1, W&I Code § 6600(a).)**

**4.** That the Ohio prior had been previously found to be **"Not True"** in **California Case Number A-766947,** due to the elements of the crimes in Ohio not statutorily matching those of California, which presented a **"Collateral Estoppel"** issue. **(Attachment 'A' id. At page 1379, and Exh.  4, id. At page 2.)**

**5.** The Ohio prior had been fully litigated, as to all issues, and the **"Not True"** finding was final for purposes of **"Res Judicata"** and **"Collateral Estoppel"** principles. **(Attachment 'A', id. At page 1379.)**

**6.** A ruling on Petitioners argument and motion for dismissal of the Petition was deferred and postponed due to a stay of proceedings order, issued by the California Court of Appeals pending a ruling on the Constitutionality of the Act, from the Superior Courts granting of a class action demurrer. With the stay of proceedings still in effect, it further proceeded to the California Supreme Court for a final determination. **(See Attachment 'G', face page of class action pleading to California Supreme Court.)**

**339.** ●● Petitioners third attorney, Deputy Public Defender, Janet Greenberg, obtained and supplied Petitioner with a copy of the "Arraignment Transcript". **(Exh. 22, "Arraignment Transcript".)**

340.   It was transcribed on April 09, 2002, and filed on April 12, 2002. On May 01, 2002, attorney Janet Greenberg mailed the transcript to Petitioner. **(Exh. 23, "Letter from Janet Greenberg".)**

341.   This transcript has been edited and doesn't include any of the issues personally presented to the Court by Petitioner, while seeking dismissal of the Petition through the remedy of demurrer. A careful reading of the transcript will show that it's been edited. **(Exh. 24, Petitioners "Declaration of Issues Presented at Arraignment", as previously presented in 1 thru 5 of paragraph 338.)**

342.   Petitioner would like to give notice to the Court that Petitioner had repeatedly attempted to obtain this transcript for approximately six (6) years through his first attorney, Deputy Public Defender David Yamada, who handled Petitioners arraignment, (only inquired once, as he left a week after the arraignment, due to sickness,) and subsequently, through his second attorney, Deputy Public Defender Nancy Ramseyer.   ●●

343.   05-25-99   Returned to Court for Probable Cause Hearing by ASH request, per amended **W&I Code § 6602.5. (Discharge Summary unavailable.)**

344.   06-16-99   Started Probable Cause with Motions to Dismiss due to lack of qualifying predicate offenses on two (2) issues:

A.   Respondents (Petitioner) Ohio conviction did not qualify under the Sexually Violent Predator Act at the time the Petition was filed, and;

B.   The Ohio conviction was previously found to be **"Not True"** in California.

345.   06-28-99   Opposition to Motion to Dismiss was filed by Deputy District Attorney, Rebecca Marie Madrid.

346.   06-30-99   Motions presented, argued and denied. (Petitioner is not sure of the exact date, because Petitioner does not have a copy of the calendar or transcript of the motion hearings.)

347.   08-06-99   Deputy District Attorney Rebecca Marie Madrid, filed an Amended Petition for commitment as a Sexually Violent Predator, for the claimed sole purpose of correcting the offense dates cited in the Petition. Petitioner objected and demurred, based on jurisdictional grounds and issue preclusion. Objection overruled and Demurrer denied. **(Exh. 36, "Amended Petition and Affidavit".)**

348.   11-19-99   Petitioner filed a Supplemental Motion to Dismiss due to lack of qualifying Sexually Violent Offense. Issue presented:

A.   If the 1996 Amendment applies to respondent, the Ohio prior should be dismissed under the terms of the Amendment.

349.   12-16-99   Motion on the Ohio prior argued and supplemented with collateral estoppel claims, per the finality of decisions from the 1987 bifurcated trial issues. Denied, ruled that **Ohio Revised Code . § 2907.05** fits **Penal Code § 288(a). (Attachment "C" and "D", respectively.)**

350.   01-12-00   A seven (7) page updated clinical re-evaluation based on record review

1   was conducted by Hy Malinek, Ph.D., dated 02-02-2000, as requested by
2   Deputy District Attorney Rebecca Marie Madrid. **(Clear exhibit unavailable.)**

3   **351.** ●● Petitioner, at Court for the probable Cause Hearing, with more direct access to
4   his attorney, once again, began trying to obtain documents from his attorney and
    include as **Attachment "H",** handwritten copies of notes and requests termed "Legal
5   Agenda to Nancy Ramseyer", showing his repeated requests for the previously
    mentioned, Arraignment Transcript, and other informational documents, one of which
6   is a request for the Court calendar. This attachment totals five (5) letters, showing
    different dates, amounting to seven (7) pages.  ●●

7   **352.**   01-13-00   Motion to produce original evaluators made, citing due process, right to
8   confrontation, and **Welfare and Institutions Code §6601(d)** requirements.

9   **353.**   01-18-00   Augmented record on priors, presenting further ex post facto, collateral
    estoppel and res judicata arguments. Issues were denied. **(No transcript**
10  **available.)**

11  **354.**   01-19-00   Motion on original evaluators argued and presented based on **Sporich v.**
12  **Superior Court (2000) 91 Cal.Rptr.2d 752; 77 Cal.App.4th 422,**
    (review denied). Motion denied.

13  **355.**   01-24-00   A seven (7) page updated clinical re-evaluation based on record review
14  was conducted by Kent Franks, Ph.D., dated 01-25-00, as requested by
    Deputy District Attorney Rebecca Marie Madrid. **(Exhibit Unavailable.)**

15  **356.**   02-22-00   Motion to exclude updated evaluations argued and denied.

16          A.   Officially started Probable Cause. Dr. Kent Franks, Ph.D., testified
17          for the prosecution.

    **357.**   03-01-00   Probable Cause continued.
18
            A.   Dr. Hy Malinek, Psy.D., testified for the prosecution.
19
    **358.**   04-28-00   A new Motion to Dismiss was filed. Issues presented:
20
            A.   The Board of Prison Terms had no authority to place the 45 day
21          hold.

22          B.   Due to the negligence of the Board of Prison Terms, the subsequent
            SVP petition was improperly filed.
23
    **359.**   05-10-00   Opposition to Motion to Dismiss was filed by Deputy District Attorney
24  Rebecca Marie Madrid. Argument presented:

25          A.   The Board of Prison Terms was authorized to place the 45 day hold
            pursuant to **California Code of Regulations, 15 CCR § 2600.1.**
26
    **360.**   05-23-00   Probable Cause continued:
27
            A.   Motion to Dismiss filed on 04-28-00, presented, argued, and denied.
28

    B.   Oral Motion to Strike Testimonies of Dr. Kent Franks, Ph.D., and Dr. Hy Malinek, Psy.D., presented, argued, and denied.

    C.   Closing arguments and summation on Dr. Kent Franks, Ph.D., presented.

**361.**  05-25-00  Probable Cause continued:

    A.   Closing arguments and summation on Dr. Hy Malinek, Psy.D., presented.

    B.   The Court ruled against closing arguments and summation, and issued ruling that Probable Cause found, and that Petitioner is to stand trial on SVP Petition.

**362.**  05-25-00  Petitioner requested and the Honorable Judge Harold Shabo, in agreement, ordered all the necessary transcripts for Writ review. (●● Petitioner, as previously shown, by **paragraphs 339 thru 342, 351**, and **Attachment "H"**, has battled up-hill to obtain documents to include as exhibits, and still has not received many of the requested items. ●●)

**363.**  06-12-00  Petitioner returned to Atascadero State Hospital, to await trial on the SVP Petition, gather exhibits and do research for the application of this instant Writ.

**A. Subject Matter Jurisdiction:**

**364.**  Blacks Law Dictionary defines Jurisdiction as:

"A court's power to decide a case or issue a decree."

**365.**  Blacks Law Dictionary defines Subject Matter Jurisdiction as:

"Jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things."

**366.**  Subject matter jurisdiction, is given by statute or regulation, and depends on an adherence to the specific requirements provided in the statute or regulation. For example, the California Supreme Court, interpreting subject matter jurisdiction for commitment proceedings in an MDO case, which would be equally applicable in an SVP proceeding, held:

**367.**  "The commitment procedures set up by the subject statute are in the nature of special civil proceedings unknown to the common law.... Being a creature of statute, jurisdiction to enter an order of commitment pursuant thereto depends on **strict compliance with each of the specific statutory prerequisites** for maintenance of the proceeding." (*In re Rainer* (1963) 59 Cal.2d 635, 639, 30 Cal.Rptr. 814, 381 P.2d 638, internal quotation marks and citation omitted, original emphasis deleted.)

(Emphasis by Petitioner)

**368.** The authority of a court to commit a person as an SVP or to extend a person's SVP commitment derives solely from the statute enacted by the Legislature governing SVP commitments, and as Petitioner claims, any acts that exceed the requirements as specifically stated, is an act in excess of the conferred jurisdiction.

**369.** Most notably, the California Supreme Court in 1924, addressed the issue of jurisdiction in ***Harrington v. Superior Court of the State of California, In and For Placer County*** (1924) 194 Cal. 185, 228 P. 15, by declaring in pertinent part:

**370.** "Jurisdiction in any proceeding is conferred by Constitution or by statute, and that of subject-matter cannot be given, enlarged, or waived by the parties..."

## B. The Limiting Factors Of The SVP Act:

**371.** Petitioner doesn't profess to be versed in law or its interpretation, but, as laws are deemed to be written using words that have a common meaning, and are meant to be understood by the common man, and by this way, inform him of what the law either forbids or allows, then Petitioner presents what he believes to be the limiting factors written into the SVP Act.

**372.** **Section 1.** The Declaratory Statement of the SVP Act states in pertinent part:

> **The Legislature finds and declares that a *small* but extremely dangerous group of sexually violent predators** that have diagnosable mental disorders **can be identified while they are incarcerated.** (Emphasis by Petitioner)

**373.** At **W&I Code § 6600**, it declares:

> **As used in this article, the following terms have the following meanings:**

**374.** **W&I Code § 6600(a)** gives a definitive description of the *person* the law is to consider as a SVP and provides:

**375.** (a) "Sexually violent predator" **means** *a person* who has been *convicted of a sexually violent offense* **against** <u>two or more</u> **victims** *for which he or she received a determinate sentence*... (Emphasis by Petitioner)

**376.** By this language and its plain word meanings, the sexually violent predator is defined

as a person who was convicted of **a** (commonly used as singular or descriptive of one of many) **sexually violent offense** (as defined in the Act later) **against two or more victims** (no less than two, but includes more than) **for which he or she received** (obtained / something given) **a** (same as above) **determinate** (precisely determined or limited or defined; especially fixed by rule or by a specific and constant cause) **sentence** (the period of time a prisoner is imprisoned).

377.   This common use applies in the legal sense that in determining **that a small, but extremely dangerous group**, is a limiting factor and that the law singles out those who had a single trial or plea agreement that involved two (or more) victims, for which one determinate sentence was given. (One abstract of judgment.)

378.   In this regard the language separates from consideration those persons that had single victims in separate trials or plea agreements, which would have resulted in more than one (multiple) determinate sentence, (More than one abstract of judgment).

379.   As an example, a person convicted and sentenced in Orange County of a case involving one victim, and has also been convicted and sentenced in Los Angeles County on a different victim, would have two victims, but would have actually received two determinate sentences (two abstracts of judgment as compared to one abstract of judgment), and for this interpretation to apply, all the legislature had to do was include an 's' at the end of the word 'sentence', creating a plurality, which would have also had the effect of making a much larger group eligible for the *statutorily stated definition* of a Sexually Violent Predator, which would then make the definition of the word 'small' mean something outside of its common definition (surplusage). Either way, this interpretation, would have made no difference as applied to a consecutive or concurrent sentence.

380.   Likewise, **if the legislature had originally intended** the pre-1977 California indeterminate sentences scheme and/or offenses and sentences from other jurisdictions to meet the **W&I Code § 6600(a)** SVP definition as shown above, they could easily have said; *"for which he or she received a sentence"*, instead of limiting the requirement

64

1    to the specific 'determinate' sentence. As stated in ***People v. Harrison*** (1989) 48 Cal.3d

2    321, 329, 256 Cal.Rptr. 401, by the California Supreme Court:

**381.**    *"The Legislature,* of course, *is deemed to be aware of statutes and judicial decisions already in existence,* and to have **enacted** or amended a statute in light thereof. [Citation.]" (**People v. Harrison** (1989) 48 Cal.3d 321, 329, 256 Cal.Rptr. 401, 768 P.2d 1078.) (Emphasis by Petitioner.)

**382.**    Of course, the above wording would have had the effect of enlarging the eligible group of potential SVP's immensely (instead of the **'small', but extremely dangerous'**), but also would have included anyone with two or more victims who had received a sentence, regardless of the jurisdiction (which would have removed consideration of that issue), and wouldn't have changed the requirement that the person would still currently have to be under the *jurisdiction* of the Department of Corrections for the Act to apply. Petitioner posits the notion that applying the intent of a statute (as in ***People v. Butler*** (1998) 68 Cal.App.4th 421), over the words used in a statute, denies the basic due process principle of, *the right to notice*, and carries with it, the propensity of arbitrary enforcement, with unfettered disregard to the limits imposed by the words themselves. In deciding ***People v. Superior Court (Gary)*** (2000) 85 Cal.App.4th 207, the 5th District Court of Appeals cited ***People v. Snook*** (1997) 16 Cal.4th 1210, where the Supreme Court stated:

**383.**    "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] *'[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.'* [Citation.] (Emphasis by Petitioner)

"When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" (***People v. Snook*** (1997) 16 Cal.4th 1210, 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808.)

**384.**    It would be hard to believe during its trip through the *legislative gauntlet*, with its attendant amendments, including the deletion of a number of crimes originally intended as qualifiers, including the deletion of **Penal Code § 668,** which specifically deals with